# ATCHISON, TOPEKA. & SANTA FE RAILWAY COMPANY *v.* HAROLD.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 347. Argued May 2, 1916.—Decided June 5, 1916.

Although the original interstate bill of lading of a car shipment was surrendered for an intrastate bill while the car was still in transit, if the car moved in a continuous interstate commerce shipment from its departure to its destination, a delivery at an intermediate point and substitution of an intrastate bill of lading is not such a new and distinct shipment as takes the car out of interstate commerce.

Although the Federal question may not have been asserted until the application for rehearing, if the state court then considered and disposed of it adversely to plaintiff in error, this court has jurisdiction under § 237, Judicial Code.

The Kansas courts, in determining the responsibility of the carrier under the bill of lading of an interstate shipment, having applied a local rule investing an innocent holder of a bill of lading with rights not available to the shipper, *held* that such rule is in direct conflict with the general commercial law on the subject, and applying the same to an interstate shipment was reversible error.

*Quære,* Whether attributing such characteristics to an interstate bill of lading in conflict with the general commercial rule would not, even in the absence of legislation by Congress, constitute a direct burden on interstate commerce.

The Carmack Amendment to the Act to Regulate Commerce, being an assertion of the power of Congress over the subject of interstate shipments, the duty to issue bills of lading and the responsibilities thereunder, was action by Congress in regard thereto and necessarily excludes state action in regard thereto.

The prime object of the Carmack Amendment was to bring about a uniform rule of responsibility as to interstate commerce and interstate bills of lading.

The principal subject of responsibility in regard to a matter within its exclusive control embraced by an Act of Congress, necessarily carries with it the incidents thereto.

93 Kansas 456, reversed.

THE facts, which involve the jurisdiction of this court under § 237, Judicial Code, and the construction of interstate bills of lading under the Act to Regulate Commerce, are stated in the opinion.

*Mr. Alfred A. Scott*, with whom *Mr. Robert Dunlap* and *Mr. William R. Smith* were on the brief, for plaintiff in error.

*Mr. Ray Campbell*, with whom *Mr. W. A. Ayers* and *Mr. J. Graham Campbell* were on the brief, for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

We are of the opinion that a motion to dismiss is without merit but the reasons which lead us to that conclusion will be more clearly appreciated after we have made a statement of the case. Until that is done we hence postpone the subject.

J. Bell & Son, having sold a carload of bulk corn to the C. V. Fisher Grain Company residing and doing business at Kansas City, Missouri, on September 21, 1910, shipped the same from Yanka, Nebraska, over the Union Pacific Railroad. The bill of lading identified the car as L. W. No. 33791 containing 100,420 pounds of corn, and the same was consigned to Topeka, Kansas, to the order of the consignors (Bell & Son) with a direction, however, in the bill of lading to "notify C. V. Fisher Grain Company, care of Santa Fe for shipment." A draft for the purchase price of the corn was mailed to Kansas City, Missouri, accompanied with the bill of lading endorsed over to the order of the Fisher Grain Company and on the presentation of this draft to the Grain Company at Kansas City, Missouri, while the car was yet in transit it

paid the same and became the possessor and owner of the bill of lading. On September 24 the Grain Company surrendered to an agent of the Santa Fe at Kansas City, Missouri, the Yanka bill of lading which it had thus acquired and took in exchange for it another bill consigning the identical car to their own order at Elk Falls, Kansas, a place on the Santa Fe road, with a direction, however, to notify at Elk Falls the Nevling Elevator Company. This bill of lading was dated the same day as the original bill for which it was exchanged, that is, September 21, although it was in fact only signed and issued on the twenty-fourth of that month; and although on its face it treated the car as being at Kansas City, in reality the car was in transit from Yanka, not having yet reached Topeka.

Harold, the defendant in error, a grain dealer at Wichita, Kansas, who had sold on September 15 a carload of corn to Shoe & Jackson at Elk Falls to be shipped or delivered in a stated number of days, bought the carload of corn described by the bill of lading issued at Kansas City, and, paying a draft for the purchase price drawn by Fisher Grain Company with the bill annexed, he became the owner of the bill and directed that delivery of the corn be made to Shoe & Jackson. The car from Yanka had then not yet been delivered to the Santa Fe at Topeka, having reached that point only on September 28, on which day it was offered to the Santa Fe for carriage and delivery at Elk Falls. Finding that the car was in bad order the delivery was declined and the car turned back to the Union Pacific. That road discovering that the damage was such that the car could not be repaired while it was loaded, sent it to an elevator, transferred the grain to another car, S. P. No. 85721, and turned that car over to the Santa Fe. The new car, however, did not contain the exact quantity of grain originally shipped from Yanka as one of the defects in the old car was a leaky door and

several hundred pounds of the corn had been lost in transit. The car was promptly carried by the Santa Fe to Elk Falls and offered for delivery, but as the period for the fulfillment by Harold of his contract with Shoe & Jackson had elapsed and there had been a decline in the market price of corn, the latter refused to take the car. Thereupon this suit against the Santa Fe was commenced by Harold to recover the loss which he had suffered by the alleged unreasonable delay in delivery at Elk Falls consisting of three items: First, the difference between the price at which the corn had been contracted to be sold to Shoe & Jackson and the market price at the date the car was offered for delivery; Second, the amount of the freight paid on the corn which had been lost; and Third, a reasonable attorney's fee which it was alleged a statute of the State of Kansas authorized to be recovered in case of delay of a carrier in the delivery of grain.

In its defense the company alleged the shipment over the Union Pacific from Yanka, averred that the corn was received by it at Topeka in order to complete the transportation to Elk Falls, and charged that by a condition of the bill of lading issued at Kansas City as the delay had been wholly caused by the Union Pacific, there was no liability on the part of the Santa Fe, and that besides that company was not liable because of a failure to give a notice of claim in compliance with a condition which was also contained in the Kansas City bill of lading. There was judgment in the trial court for the plaintiff and the judgment of the court below affirming such action is the one now under review.

The court after referring to the bill of lading sued on (the one issued at Kansas City), and after stating that "the shipment intended to be described in the bill of lading originated at Yanka, Nebraska, on the Union Pacific Railway," proceeded to state the facts which we have recapitulated and which had been admitted in

evidence without objection.   In substance conceding
that if the facts stated were made the test of the rights
of the parties the judgment under review was wrong be-
cause there had been as a matter of fact no unreasonable
delay in delivering the corn by the Santa Fe, it was held
that the judgment rendered was right since the plaintiff
below as the purchaser of a bill of lading for value had
a right to rely upon the face of the bill, to treat the corn
as having been received by the carrier at Kansas City
on the date the bill of lading was issued, and therefore
to recover for the unreasonable delay in delivery which
necessarily would result from excluding from view the
facts concerning the movement of the corn from Yanka,
Nebraska, and the date of its delivery at Topeka to the
Santa Fe.   The essence of the opinion, 93 Kansas, 456,
was aptly summed up in the syllabus which preceded it
drawn by the court which is as follows:

"1. The rule which invests the innocent holder of a
bill of lading with rights not available to the shipper,
declared in *Savings Bank* v. *A., T. & Santa Fe. R. R.*, 20
Kansas, 519; *Railway Co.* v. *Hutchings*, 78 Kansas, 758, 99
Pac. Rep. 230; and *Hutchings* v. *Railway Co.*, 84 Kansas,
479, 114 Pac. Rep. 1079, is followed in a case where the
plaintiff purchased corn described in a bill of lading, and
paid the shipper's draft attached to the bill in the usual
course of business."

In addition the allowance of the attorney's fees under
the Kansas statute was upheld on the ground that the
statute was within the legitimate police power of the
State to enact and not repugnant to the state or Federal
Constitution.

The motion to dismiss referred to at the outset is based
on the ground that the action of the court involved no
question of interstate but purely one of intrastate com-
merce.   But this disregards the fact that the bill of lading
which was sued upon was an interstate commerce bill

covering a shipment from Kansas City, Missouri, to Elk Falls, Kansas. True it is urged that that bill of lading is not the test of whether there is jurisdiction because it was shown that in reality the shipment was an intrastate one from Topeka, Kansas, to Elk Falls in that State. But this assumes that although the judgment rests upon the conception that the previous movement of the corn from Yanka could not be considered as against the plaintiff because he was an innocent third holder of the bill of lading issued at Kansas City, nevertheless for the purpose of determining whether jurisdiction exists the facts as to the shipment from Yanka must be treated as relevant. Leaving aside, however, this contradiction and considering the facts as to the movement of the grain from its inception, we are of opinion that from that point of view it was clearly established that the grain moved in a continuous interstate commerce shipment from the date of its departure from Yanka to the termination of the transit at Elk Falls and that the delivery of the car to the Santa Fe at Topeka for further movement was therefore not a new and distinct shipment in intrastate commerce. We reach this conclusion in view of the place of business of the Fisher Grain Company (Kansas City, Missouri), of the fact that there was no person at Topeka to whom the grain was consigned, of the endorsement of the bill of lading to the Fisher Grain Company and the annexing to it of a draft drawn on that company at Kansas City for the purchase price, and because the order on the face of the bill of lading to "notify C. V. Fisher Grain Company, care of Santa Fe for shipment" made it apparent that it was not contemplated that the interstate shipment should terminate at Topeka, but that the car should move on as the result of such direction as might be given while it was in transit by the Fisher Grain Company at Kansas City, Missouri.

But further it is said that granting there was a Federal

question, as it was not asserted or relied upon until application for a rehearing, it is not open for consideration. The answer, however, is that the court considered and disposed of the question by holding that the facts which were otherwise pertinent and controlling must be put out of view because the interstate commerce bill of lading in the hands of Harold, the purchaser, was in fact negotiable paper giving greater rights to such purchaser than could be enjoyed by the shipper or by the one from whom he had acquired the bill. It is obvious, therefore, that this was a decision of a Federal question which we have power to dispose of as such, and we come to consider it.

That the local rule applied by the court below was in direct conflict with the general commercial law on the subject as repeatedly settled by this court, is plain. *Shaw* v. *Railroad Co.*, 101 U. S. 557; *Pollard* v. *Vinton*, 105 U. S. 7; *Iron Mountain Ry.* v. *Knight*, 122 U. S. 79; *Friedländer* v. *Tex. & Pac. Ry.*, 130 U. S. 416; *Mo. Pac. Ry.* v. *McFadden*, 154 U. S. 155; *The Carlos F. Roses*, 177 U. S. 655, 665.

Nothing could better point out the irreconcilable conflict between the local doctrine applied by the court below and the general law as illustrated in the cases cited than does the following statement in the opinion in the *Roses Case* last cited (p. 665):

"A pledgee to whom a bill of lading is given as security gets the legal title to the goods and the right of possession only if such is the intention of the parties, and that intention is open to explanation. Inquiry into the transaction in which the bill originated is not precluded because it came into the hands of persons who may have innocently paid value for it."

Whether in the absence of legislation by Congress the attributing to an interstate bill of lading of the exceptional and local characteristic applied by the court below in

conflict with the general commercial rule constituted a
direct burden on interstate commerce and was therefore
void need not now be considered.  This is so because ir-
respective of that question and indeed without stopping
to consider the general provisions of the Act to Regulate
Commerce it is not disputable that what is known as the
Carmack Amendment to the Act to Regulate Commerce
(act of June 29, 1906, c. 3591, § 7, 34 Stat. 593) was an
assertion of the power of Congress over the subject of
interstate shipments, the duty to issue bills of lading and
the responsibilities thereunder, which in the nature of
things excluded state action.  *Adams Express Co.* v.
*Croninger*, 226 U. S. 491, 505–506; *Mo., Kan. & Tex. Ry.*
v. *Harriman Bros.*, 227 U. S. 657, 671–672; *Boston & Maine
R. R.* v. *Hooker*, 233 U. S. 97, 110; *Atchison, Topeka &
Santa Fe Ry.* v. *Robinson*, 233 U. S. 173, 180; *Cleveland &
St. Louis Ry.* v. *Dettlebach*, 239 U. S. 588; *Georgia, Florida
& Alabama Ry.* v. *Blish Milling Co., ante*, p. 190.

Indeed in the argument it is frankly conceded that as
the subject of a carrier's liability for loss or damage to
goods moving in interstate commerce under a bill of lading
is embraced by the Carmack Amendment, state legisla-
tion on that subject has been excluded.  It is insisted,
however, that this does not exclude liability for error in the
bill of lading purporting to cover an interstate shipment
because "Congress has legislated relative to the one, but
not relative to the other."  But this ignores the view ex-
pressly pointed out in the previous decisions dealing with
the Carmack Amendment that its prime object was to
bring about a uniform rule of responsibility as to interstate
commerce and interstate commerce bills of lading,—a
purpose which would be wholly frustrated if the proposi-
tion relied upon were upheld.  The principal subject
of responsibility embraced by the act of Congress carried
with it necessarily the incidents thereto.  See the sub-
ject aptly and clearly illustrated by *St. Louis & San*

*Francisco R. R.* v. *Woodruff Mills,* 105 Mississippi, 214, where a statute of the State of Mississippi accomplishing the very result applied by the court below was decided to be no longer applicable to interstate commerce because of the taking possession by Congress of the field by virtue of the amendment referred to.

As it follows from what we have said that the court below erred in applying the local law to the interstate commerce shipment under consideration, its judgment must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*And it is so ordered.*