## New Orleans & N. E. R. Co. *v.* Wood.

### [73 South. 615, Division B.]

1. CARRIERS. *Live stock carriers. Injuries to stock. Claim for damages. Time of filing. Waiver.*

    Where the owner making an interstate shipment of live stock shipped them under a bill of lading, providing that as a condition precedent to recovery for injuries to the stock, the shipper should give notice in writing of the claim to a general officer or the nearest station agent, before removing the stock from the cars or from the place where it was unloaded, within twenty-four hours after the stock reached the place of destination, a substantial and not a literal compliance with the terms of the contract is all that would be required in any case, and the benefit of this provision could be waived by the station agent of the carrier.

2. SAME.

    Under such a bill of lading, where the very station agent who by the contract was authorized to accept the written notice assured the shipper that he would have sufficient time to propound his claim, and such agent assisted the shipper in unloading the car and in making an examination of the live stock, their injuries, general condition and the apparent damage to the entire shipment, and taking the expense bill himself, made a written notation thereon of the damage which he personally observed and signed his name thereto. In such case the requirement for written notice was waived and the shipper could recover the damage he sustained.

APPEAL from the circuit court of Jones county.
HON. PAUL B. JOHNSON, Judge.

Suit by W. R. Wood against the New Orleans & Northeastern Railroad Company. From a judgment for plaintiff, defendant appeals.

Appellee, W. R. Wood, as plaintiff in the court below, instituted this action in the court of a justice of the peace of Jones county to recover one hundred, ten dollars damages to a carload of cattle shipped by the plaintiff from New Orleans, La., to his own order at Ellisville, Miss. The cattle were loaded at New Or-

leans, La., about six o'clock p. m. of August 1, 1914, and were during that night transported to Ellisville, Miss., the point of destination, ready for delivery early on the morning of August 2d. The plaintiff himself superintended the loading of the cattle at New Orleans and then took passage upon one of the regular passenger trains of appellant about eight-thirty p. m. on the evening of August 1st, and himself called at the station of appellant at Ellisville early on the morning of the 2d, to receive the shipment. It is the testimony of plaintiff and his witnesses that when plaintiff went to the stock pen where the car was placed, the cattle were piled or jammed up in one of the rear-end corners of the car; that one was lying dead upon the floor of the car, and others appeared to be bruised and injured; that when the car was opened, he found that three were down on the floor of the car, two of which were still living, and which he succeeded in getting out of the car in a dying condition; that one died on the way home; and several were terribly bruised; that the steer that was dead in the car had his ribs crushed in, and was otherwise bruised and skinned. The evidence further shows that before appellee accepted the shipment he notified Mr. Ward, the regular station agent at Ellisville, that plaintiff was not willing to receive the cattle in the condition they were in, saying to the agent "that they were terribly damaged, and I wanted him to know any injuries they received, because I expected damages for them;" that Mr. Ward went down with plaintiff and personally examined the shipment, and himself made notations upon the expense bill of the damage which he then and there observed. Appellee further testifies as follows:

"I notified the railroad company before I received the cattle that I would ask for damages through their agent, Mr. Ward. . . . I asked him what was the rules about it, and he said he didn't know any particular time, but I had ample time, but I notified him there,

and took the notice on that expense bill, so I would be armed with sufficient evidence to show the condition of the cattle when I received them.''

At another point in his testimony he says:

''At the time that he (the agent) wrote that notation, there were one or two that hadn't died. One or two died after the notation was made.''

The following question and answer then appears:

''Q. You are positive he told you that (referring to the question of time for the notice)? A. Yes; that I would have ample time.''

The plaintiff further testified that while he received, himself, the bill of lading, and paid the freight on the shipment, he did not read over the document, and therefore did not actually know that the bill of lading contained the provision shown in the eighth clause thereof, which is as follows:

''Eighth—As a condition precedent to his right to recover any damages for any loss or injury to said live stock, the party of the second part shall give notice in writing of the claim therefor to some general officer or to the nearest station agent of the party of the first part before the said stock is removed from the cars in which it was shipped - or from where it has been unloaded and before such stock is mingled with other stock; and such written notification must be served within twenty-four hours after said stock has reached such place or point of destination, to the end that such claim may be fully and fairly investigated, and a failure fully to comply with the provisions of this clause shall be a bar to the recovery of any and all claims for damages, loss or injury.''

The bill of lading covering the shipment is the uniform bill of lading commonly used by carriers in interstate shipment, styled: ''Live Stock Contract, Limiting the Liability of Carriers.'' On the trial of the case in the circuit court, appellant requested an instruction from the court that if the jury believed from the evi-

dence that the plaintiff failed to give to the defendant the notice in writing required by clause 8 of the contract, they should find for the defendant. This instruction was by the court refused, and is here assigned as error. The jury returned a verdict in favor of the plaintiff, and from the judgment based thereon appellant appeals.

*Ben F. Cameron, Jr., A. S. Bozeman, R. H. & J. H. Thompson* and *Fulton Thompson,* for appellant.

Appellee's counsel contend that the notice required in the eighth clause of the live stock contract has been waived by the appellant Railroad Company. It is not stated in their brief what is relied on to work this waiver; but we assume it is the testimony of appellee that, in response to his inquiries as to the time within which claims must be filed, the station agent of appellant replied that he did not know, but thought there was ample time. This is the only evidence we can find on which counsel's contention might be based. In other words, appellee maintains that this declaration on the part of a local station agent, whose authority the record does not disclose, serves to excuse him from fulfilling the term of a contract signed by himself, a copy of which he owned; the contents of which he is conclusively presumed to know.

The bill of lading governing this shipment had been regularly established and put in force under the Interstate Commerce Act and Amendments. See *C. N. O. & T. P. Ry. Co.* v. *Rankin, supra.* The contract was executed under the Carmack Amendment and the provisions of this statute enter into and form a part of it. See *Northern Pacific Ry. Co.* v. *Wall,* 241 U. S. 87; United States Advanced Opinions, 1915, page 493, 495. Its provisions, if valid, must be enforced as written, and their application cannot be varied by any oral representations or agreements. As the United States supreme

court said in the case of *Atchinson T. & S. F. R. Co.*
v. *Robinson*, 233 U. S. 173, 58 Law Ed. 901, 904: "To
maintain the supremacy of such oral agreements would
defeat the primary purposes of the interstate com-
merce act, so often affirmed in the decisions of this
court, which are to require equal treatment of all
shippers.

Counsel for appellee seem to differ with us as to
the construction to be put on the language used by the
United States supreme court in the case of *Georgia,
Florida & Alabama Railway Company* v. *Blish Milling
Company*, 241 U. S. 190, United States Advanced Opini-
ons, 1915, page 541. The court, speaking through
Justice HUGHES, of the power of parties to waive the
requirements of a contract of affreightment which was
executed under the Carmack Amendment, used the
following language: "But the parties could not waive
the terms of the contract under which the shipment was
made pursuant to the Federal act; nor could the carrier
by its conduct give the shipper the right to ignore these
terms which were applicable to that conduct, and hold
the carrier to a different responsibility from that fixed
by the agreement made under the published tariffs and
regulations. A different view would antagonize the plain
policy of the act and open the door to the very abuses
at which the act was aimed." To our minds, this
language conveys very clearly the idea that parties can-
not vary the terms of these contracts, because inequali-
ty and discrimination, the evils which the Interstate
Commerce Laws seek to correct, would be the inevitable
result. On this point the United States supreme court
said, in the case of *New York, New Haven and Hart-
ford, R. Co.* v. *Interstate Commerce Commission,* 50
Law. Ed. 200, (U. S.), 361, 515, 521; "If the public
purpose which the statute was intended to accomplish
be borne in mind, its meaning becomes, if possible,
clearer. What was that purpose. It was to compel the
carrier, as a public agent, to give equal treatment to all.

It is patent that, if a station agent of a carrier could, by work or act, waive or excuse performance of a valid stipulation of a bill-of-lading, the rankest abuse would follow and the ends sought to be obtained by the commerce laws would be completely thwarted. For this reason, it is the policy of the law, in order to secure equality of treatment to all, to repudiate any agreements or representations, by whomsoever made, which vary the express terms of the contract or excuse the performance thereof. As further supporting our views on this question we refer the court to the case of *Kidwell* v. *Oregon Short Line R. Co., supra,* and the case of *M. K. T. R. Co.* v. *Harriman Bros.,* 57 Law Ed., 227 U. S. 657, 690, 697.

Counsel for appellees think that the question of waiver is forever settled in this state by the decision of the court in the case of *Lasky* v. *Southern Express Company,* 45 So. 869. Examination of this case shows that the loss which formed the basis of the suit occurred in November, 1903, nearly three years before the passage, by Congress, of the Carmack Amendment. The conclusions there reached are, of course, superseded by this amendment to the commerce laws of the United States and the decisions of the Federal courts construing same. It can be readily seen that the learned judge did not consider the question before him a Federal one, to be controlled by Federal legislation and decisions; for instance, it is stated in the opinion that: "We have no case holding that a carrier may limit the time within which suit shall be commenced after they have received notice of the loss or damage, and since the passage of section 3127 of the Code of 1906, the question is of no practical importance." Thus indicating that it was in his mind that the state statutes controlled. On this very point the supreme court of the Nation, in the *Harriman case* cited *supra,* upheld a stipulation in a bill-of-lading requiring suit to be brought within ninety days. In the *Lasky case* the court further said: "These stipulations

are made on the contracts of shipment, and are rarely read by the shipper, and the one ground upon which they can be upheld is that they are reasonable regulations—not contracts in the true sense." A doctrine directly contrary to this has been repeatedly held by the United States supreme court. See, for instance the case of *Northern Pacific R. Co.* v. *Wall, supra.*

The decision cited by counsel therefore, has no application to the present case, since it was rendered without reference to the interstate commerce laws of the United States, and particularly the Carmack Amendment, and before Congress took such complete and exclusive charge of interstate transportation as is clearly found by reference to the Federal decisions, cited in this brief and others rendered in recent years. It is clearly in conflict with the Federal decisions cited in support of our position, and no subtlety of argument by counsel can reconcile it with them. We submit, therefore, that, even if the conduct of the station agent at Ellisville was such as to constitute a waiver, the the notice required in the eighth clause of the contract could not, under the law, be waived.

*W. J. Pack* and *Jeff Collins,* for appellee.

Counsel for appellee contends, lastly, that even if this requirement of the regulation as to the time of giving notice by appellee of his claim was not sufficiently complied with and was a reasonable regulation, yet it was waived by the railroad company. Counsel for appellant, in their brief say that this provision of the contract cannot be waived by the railroad company or its agents and cite in support of this contention *Georgia, Florida & Alabama Railroad Company* v. *Blish Milling Company,* 241 United States, 190, but we submit that what the court holds in that case was that the parties could not waive the contract of carriage to a suit *in trover* for the conversion of the goods. It will be fur-

ther noticed in that case that the court had under consideration the regulation requiring written notice to be given within four months after the shipment reached its destination and not twenty-four hours as in this case. Our course in the case of *I. C. Railroad Company* v. *Bogard,* 27 So. 879, construing a contract of shipment—it was an interstate shipment—requiring notice to be given within ten days after the shipment had reached its destination, held that it was waived by the railroad company. But we think this question is forever settled in this state by the case of *Lasky* v. *Southern Express Company,* 45 So. 869, and we submit that this case is not *contra* to the opinion in the *Blisk Milling Company case, supra.* Judge MAYS, in the case above cited, construed the so called "contract" as a "regulation" made by the company for the benefit of the carrier and not a contract in the strict sense of the word. The court had under consideration a regulation in an interstate shipment requiring written notice to be given within ninety days, when in fact, no written notice was ever given. The court held that for the railroad company to make a defense that the regulation had not been complied with it must show two things, namely; first, "when the shipper makes complaint of damages or loss it must show that it has done nothing to mislead him or cause him to believe that it has waived the requirement that the claim shall be in writing. When the claim is made to a carrier, even when it has in the contract of shipment the requirement that it shall be in writing, if it accepts a verbal claim, without protest, and undertakes to deal with the claim in any way, it waives the requirement that it shall be in writing. If the carrier intends to stand upon this stipulation it must decline to have anything to do with a claim which is propounded verbally, and notify the person undertaking to propound his claim in this way, at this time; and if it does not, and deals with the claim in any way, or does anything which leads the shipper into the belief that this

requirement has been waived, it cannot afterwards insist upon it." Second, "it must be reasonable as to the time;" as quoted from the record above, the testimony in this case shows that the shipper went to the company's agent and had him go to the car in which the cattle were at the time and look at them and note down their condition on the expense bill, and the agent not only did not refuse to do this, but told him that there was no regulation as to the time to put in a claim. But counsel say that it cannot be waived under the United States decision of the case of *Georgia, Florida & Alabama Railroad Company* v. *Blish Milling Company, supra,* and insist that that case so holds, but we submit that a cursory study of the case reveals that this is not the point. The point decided, as stated above, is that a suit *in trover* for the conversion of the shipment cannot be brought to escape the contract. It will be noted that there was no action of the railroad company shown upon which a presumption of waiver could be based. It was the shipper in that case trying to escape the provisions of the contract.

STEVENS, J., delivered the opinion of the court.

(After stating the facts as above). We base an affirmance of this case upon the testimony which tends to prove, and which is sufficient to warrant the jury in finding, that the provisions of the contract in reference to notice of claim for damages were waived. The only point argued by counsel for appellant is the alleged failure of appellee to give the notice required by clause 8 of the contract. Counsel cite, as binding upon this court, *Atchison, etc., R. Co.* v. *Harold,* 241 U. S. 371, 36 Sup. Ct. 665, 60 L. Ed. 1050, *Northern Pacific R. Co.* v. *Wall,* 241 U. S. 87, 36 Sup. Ct. 493, 60 L. Ed. 905, *Cincinnati, etc., R. Co.* v. *Rankin,* 241 U. S. 319, 36 Sup. Ct. 555, 60 L. Ed. 1022, *Georgia, etc., R. Co.* v. *Blish Milling Co.,* 241 U. S. 190, 36 Sup. Ct. 541, 60 L.

Ed. 948, and other pronouncements of the Federal supreme court. We readily concede the binding authority of these cases wherever and whenever applicable to the facts of any particular case. The contention is here made that, under the decision of the Federal supreme court, in *Georgia, etc., R. Co.* v. *Blish Milling Co., supra,* the agent of appellant could not waive any of the provisions of the contract covering an interstate shipment. We do not so construe the opinion in that case. The court did decide that the shipper could not waive or utterly ignore the entire contract and sue the carrier *in trover.* He could not, by changing the form of his action and suing in tort, escape the obligations imposed upon him by the contract. In the instant case, the contract itself provides that the provisions requiring written notice of the claim to be served within twenty-four hours after the stock reaches the point of destination is inserted "to the end that such claim may be fully and fairly investigated." It is inserted for the benefit of the carrier. A substantial, and not a literal, compliance with the terms of the contract is all that would be required in any case. We see no reason why the benefit of this provvision could not be waived.

The evidence in the present case sufficiently shows a waiver. The very station agent, who, by the contract, is authorized to accept the written notice, assures the shipper that he will have sufficient time to propound his claim; and the circumstances under which he gives this assurance, taken in connection with the language employed by the agent, might, naturally, mislead any ordinarily prudent man. The regular station agent was personally notified of the damage within a few hours after the shipment arrived, and the agent himself assisted the shipper in unloading the car and in making a personal examination of the live stock, their injuries, general condition, and the apparent damage to the entire shipment. In making this personal observation the

agent takes the expense bill, and himself makes a written notation thereon of the damage which he personally observed, and signs his own name thereto. In addition to the verbal notice given by the shipper, and the personal examination made by the station agent himself and his written notation upon the expense bill of the extent of the damage as he saw it, appellee, on the 18th day of the same month, filed a formal written demand for damages. The expense bill referred to had the following notation:

"Two dead, one in bad condition, the balance bruised and in bad shape. Received payment for the company, August 2, 1914.

"M. E. WARD, Agent."

The failure to give any formal written notice within the twenty-four hours stipulated did not under the circumstances of this case, in any way prejudice the rights of appellant. It accepted the verbal notice; its agent made the necessary examination, made a written notation of the extent of damage, and himself assured the shipper that the latter had ample time in which to propound his claim for damages. The shipper followed up this understanding with the agent by formally filing his written claim for damages in a few days thereafter; and the presentation of this subsequent written claim on the 18th day of August in no wise changed the claim which plaintiff interposed on the day he received the injured cattle. The wholesome purpose which the provision for notice was intended to serve was fully accomplished.

Liberal instructions were given appellant on the trial in the court below, the case was fairly presented to the jury, and there is no reason to disturb their verdict.

*Affirmed.*