## OLIVIER STRAW GOODS CORPORATION v. OSAKA SHOSEN KAISHA.

District Court, S. D. New York. September 17, 1927.

**1. Evidence ⬅407(2)—Shipping ⬅106(3)—Bill of lading recital that merchandise was received on ship was not warranty, but receipt, which as between parties could be contradicted.**

As between shipper and carrier, recital of bill of lading that merchandise was received on shipboard was not a warranty, for the breach of which carrier could be held liable, but it was merely an acknowledgment of receipt, which as between the parties to the contract could be contradicted.

**2. Carriers ⬅57—In absence of estoppel, purchaser of bill of lading acquires only shipper's title and rights.**

In absence of estoppel of carrier, purchaser of bill of lading acquires only the title to property shipped and whatever rights shipper would have under the bill of lading.

**3. Carriers ⬅57—Estoppels against carrier in favor of purchaser of bill of lading rest on falsity of representation, intending others to rely thereon.**

Estoppels against carrier in favor of purchaser of bill of lading are enforced in the interest of fair and honorable dealing, and rest, not on premeditated fraud, but on falsity of representation in bill of lading, made with intent that others shall rely on the truth of what is said; such intent to be inferred from the natural consequences of the carrier's act, to be judged in the light of usual commercial practice.

**4. Shipping ⬅106(3)—Carrier, issuing bill of lading reciting receipt of goods on shipboard, held not estopped to show loss of goods from warehouse from causes for which it was not responsible.**

Carrier, in good faith issuing bill of lading reciting receipt of goods on shipboard before vessel had arrived in port to take goods, which were placed in warehouse pending arrival of the ship, without any intent to influence acceptance of seller's draft attached to bill of lading, or to otherwise prejudice any one, *held* not estopped, as against purchaser of bill of lading, from showing the loss of the merchandise by looting after warehouse was destroyed by earthquake, and that such loss was due to causes for which it was not responsible under terms of its contract.

In Admiralty. Libel in personam by the Olivier Straw Goods Corporation against Osaka Shosen Kaisha, as owner of the steamship Alaska Maru. Libel dismissed.

In admiralty. Libel in personam by the holder of a bill of lading to recover from the owners of the steamship Alaska Maru damages for failure to deliver a shipment of hemp braid.

The libelant is the holder of a bill of lading issued by the agents of the respondent under the following circumstances: On August 29, 1923, Nozaki Bros. & Co., Limited, delivered to the respondent in Yokohama 18 cases of hemp braid for shipment on the respondent's steamer Alaska Maru from Yokohama to New York. Pending the arrival of the ship, which was not then in port, this merchandise was placed in a warehouse within the Custom Compound at Yokohama, and a dock receipt was on the 29th of August given to the shipper. On the following day, August 30th, the respondent issued its bill of lading covering this shipment, which contains the following:

"From Yokohama to New York, N. Y. Shipped ~~or delivered for shipment~~, in apparent good order and condition by Nozaki Bros. & Co., Limited, on board the Osaka Soshone Kaisha's steamship Alaska Maru, or chartered steamship ——, under Japanese flag * * * eighteen (18) cases hemp braids only * * * to be delivered in like good order and condition at the port of New York, N. Y., * * * unto order of the International Acceptance Bank, Inc., New York, N. Y. * * * subject to the exceptions and conditions hereinafter enumerated. * * * Notify Messrs. Olivier Straw Goods Corp. 601 Broadway, New York, N. Y."

Among the conditions and exceptions enumerated are the act of God, and the consequences of mobs, pirates, robbers, thieves, or pilferers, by land or water.

At the time when this bill of lading was issued, the vessel had not arrived in port, and was not expected to arrive until the 2d or 3d of September, and the shipper knew that she was not scheduled to sail until September 3d. On September 1st an earthquake occurred in Japan, with such enormous destruction of life and property that the city of Yokohama was rendered unsafe for human life and habitation. For several days the city was without police protection, and looting became general. Martial law was later established, but, before there was any semblance of order or control, the warehouse in which the merchandise was stored, itself seriously damaged by the earthquake, was looted, the cases in which the hemp braid was contained were broken open, and their contents were stolen. The voyage of the Alaska Maru from Yokohama was abandoned because of the conditions there prevailing, and as a direct consequence of the earthquake, the ship coming to port solely for the purpose of rescuing survivors.

The shipment in question was made pursuant to a contract between the shipper and

the libelant under which a letter of credit was established in favor of the shipper, payment to be made against draft with bill of lading attached. Such a draft was presented to, accepted, and ultimately paid, by the International Acceptance Bank, and through other banking channels was charged to the account of the libelant, who before commencement of this suit reimbursed the bankers and took up the draft and the bill of lading.

Bigham, Englar & Jones, of New York City (Henry N. Longley and E. G. Benedict Fox, both of New York City, of counsel), for libelant.

Hunt, Hill & Betts, of New York City (John W. Crandall and J. Newton Nash, both of New York City, of counsel), for respondent.

THACHER, District Judge (after stating the facts as above). For the purpose of decision, it may be assumed that the libelant acquired the bill of lading for value, and without notice that the voyage had been abandoned and the merchandise destroyed before being put aboard the vessel.

[1] Such cases as Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998, turning as they do upon questions of agency, are not controlling, because the bill of lading in this case was issued upon actual receipt of the merchandise, and the authority of the agent who issued it is not questioned. The shipper must have known that, contrary to its recital, the merchandise was not physically on board the vessel when it received its bill of lading. Delivery was made to the warehouse before the ship arrived in port. She was not scheduled to sail for several days, and of her schedule the shipper had notice. Furthermore, as between the shipper and the carrier, the recital that the merchandise was received on board was not a warranty for the breach of which the carrier could be held liable. It was merely an acknowledgment of receipt, which, as between the parties to the contract, could be contradicted. The Delaware, 14 Wall. 579, 600–602, 20 L. Ed. 779; The Isla de Panay (C. C. A.) 292 F. 723, 730, affirmed 267 U. S. 260, 45 S. Ct. 269, 69 L. Ed. 603. The asserted liability must therefore rest upon rights attributed to the subsequent purchaser of the bill of lading, superior to those of the original shipper.

[2-4] Instances of the enforcement of any such liability are extremely rare in the federal courts, because, in the absence of estoppel, the purchaser acquires only title to the property shipped and whatever rights the shipper would have under the bill of lading. Shaw v. North Pennsylvania R. Co., 101 U. S. 557, 25 L. Ed. 892. The case of Higgins v. Anglo-Algerian S. S. Co., 248 F. 386 (C. C. A. 2d), is cited, but in that case estoppel was enforced because the carrier misrepresented the condition of the merchandise shipped, intending that subsequent purchasers of the bill of lading should rely upon its representations. Estoppels are enforced in the interest of fair and honorable dealing. They rest, to be sure, not upon premeditated fraud, but upon falsity of representation, made with intent that others shall rely upon the truth of what is said. Such intent may of course be inferred from the natural consequences of the carrier's act, to be judged in the light of usual commercial practice. But in this case no such intent is inferable. When the bill of lading was issued, there was no reason to believe that any one could be prejudiced by the recital that the merchandise was on board when the bill of lading was issued. It was not made with intent to influence the acceptance of the seller's draft, nor can the expectation that it would influence any person's action be imputed to the carrier. No one could have foreseen the earthquake and its consequences which destroyed the merchandise before it could be put on board, and it was only the intervention of this act of God which gave the recital importance. Viewing the transaction as of the time when the bill of lading was issued, it is clear that the carrier acted in entire good faith, intending and agreeing to put the merchandise aboard when the vessel arrived, and without any reason to believe that any subsequent purchaser would be prejudiced by the recital that the goods were already on board, when in fact they were in the warehouse awaiting arrival of the ship.

Under these circumstances there is no injustice in permitting the carrier to show that the loss of the merchandise was due to causes for which it was not responsible under the terms of its contract. To preclude its assertion of this defense would result in an odious and unjust extension of the equitable doctrine of estoppel, contrary to the principles of fair dealing upon which that doctrine rests. I am unable to distinguish Atchison, Topeka & S. F. R. Co. v. Harold, 241 U. S. 371, 36 S. Ct. 665, 60 L. Ed. 1050, from the case at bar. That decision does not, as the libelant contends, turn on agency, but rests upon the ground that purchasers of bills of lading acquire no greater rights than the original shippers. In that case the

grounds for estoppel were quite as strong as those asserted at bar, but were held insufficient. The Isla de Panay, 267 U. S. 260, 45 S. Ct. 269, 69 L. Ed. 603, Id., 292 F. 723 (C. C. A. 2d), is not precisely in point, because estoppel was there attempted to be predicated upon silence, not upon affirmative misstatement. But in that case the equities were much stronger than in the case at bar, and the decision is properly cited to show that the ruling in the Higgins Case can be extended only to cases which in equity require the enforcement of an estoppel. In my opinion this is not such a case.

The loss having been occasioned and the voyage having been prevented by causes for which the carrier was not liable under the terms of its contract, the libel must accordingly be dismissed.