WESTERN TRANSPORTATION COMPANY, Plaintiff-Appellant, *v.* TERMINAL FREIGHT COOPERATIVE ASSOCIATION *et al.*, Defendants-Appellees.
First District (3rd Division)    Nos. 80-2965, 81-690 cons.

Opinion filed December 2, 1981.

Abraham A. Diamond and Steven C. Weiss, of Chicago, for appellant.

Arnstein, Gluck & Lehr, of Chicago (Arthur L. Klein, Michael A. Stiegel, and Shepard Gould, of counsel), for appellee Terminal Freight Cooperative Association.

Chatz, Berman, Maragos, Haber & Fagel, of Chicago, for appellee Waterloo Industries, Inc.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Western Transportation Company filed a Chapter XI petition for rearrangement pursuant to the Bankruptcy Act. On May 30, 1979, an auditor was authorized by the bankruptcy court to audit plaintiff's freight bills to determine if claims existed for freight charges. As a result, plaintiff filed this action against defendants, Terminal Freight Cooperative Association and Waterloo Industries, Inc., seeking payment of freight undercharges for 61 shipments of goods. Some of the shipments were made as early as 1976.

Plaintiff is an interstate motor carrier which was engaged to and did carry the subject goods from Iowa to Chicago. Defendant Terminal Freight is a freight handling cooperative responsible for the transportation of the goods to various Sears Roebuck & Company stores and was

the named consignee on the bills of lading which were prepared by defendant Waterloo for the shipments.

Defendants by answer and by motion to dismiss pleaded the three years' statute of limitations applicable to the recovery of freight charges under the Interstate Commerce Act. (49 U.S.C. §11706(a), (g) (1978 Supp. II).) The trial court granted defendants' motion to dismiss that portion of the complaint pertaining to shipments barred by the statute. The parties thereafter filed cross-motions for summary judgment. The trial court denied plaintiff's motion and granted defendants' motion for summary judgment.

Both in the trial court and in this court, the parties agree that the facts are undisputed and that the matter is proper for summary judgment. On appeal plaintiff contends that the trial court erred in holding that a portion of the action was barred by the statute of limitations. It also argues that the court erred in granting summary judgment in favor of defendants and in not awarding judgment in plaintiff's favor. It has appealed both orders, and the appeals have been consolidated. Since our view is that the trial court correctly awarded summary judgment in favor of defendants, it is unnecessary to consider the statute of limitations issue.

In granting summary judgment for defendants, the trial court found that there had been no reconsignment of the goods within the meaning of the Middlewest Bureau Tariff 125-D, Item 820, which required that extra charges be assessed against a shipper whenever a reconsignment occurred. The tariff in question provides in pertinent part:

> "*Reconsignment or Diversion*
> A request for the reconsignment or diversion of a shipment will be subject to the following definitions, conditions and charges:
> 1. *DEFINITION OF RECONSIGNMENT OR DIVERSION*
>     For the purpose of this rule, the terms "reconsignment" and "diversion" are considered to be synonymous and the use of either will be considered to mean:
>     a. A change in the name of the consignor or consignee.
>     b. A change in the place of delivery within original destination point.
>     c. A change in the destination point.
>     d. Relinquishment of shipment at point of origin.
>     e. Instructions received by the originating carrier prior to receipt of shipment."

The pertinent bills of lading for the subject shipments contained the following printed words along the top:

> "The goods described below, in apparent good order * * * marked, consigned, *and destined as indicated below*, which said

carrier * * * agrees to carry to its usual place of delivery at said destination * * *."

The only address appearing on the face of the bills of lading was the following:

"Consigned to:
        Terminal Freight Coop Ass'n.
        5537 W. 26th Street
        Cicero, Ill."

Despite the Cicero address, the parties had an oral agreement for eight years whereby plaintiff would carry the goods only so far as its own terminal in Chicago. It was customary for plaintiff to pull all of its shipments into the terminal to rate the bills and to change from intercity to local drivers. At the terminal, plaintiff would telephone the consignee, Terminal Freight, to determine to which of two rail yards in Chicago the goods should be delivered. Although plaintiff always knew from the inception of the carriage that the goods were to be delivered either to the 63d Street or 47th Street Conrail rail yards in Chicago, it did not receive instructions as to the final disposition of the goods until it telephoned Terminal Freight from its own terminal.

Based on these undisputed facts, the trial court held that there was no reconsignment or diversion within the tariff's meaning, since there was neither a change in the place of delivery nor a change in the name of the consignee. The court accepted defendant's argument that parol evidence was admissible to determine whether the subject shipments were reconsigned or diverted within the meaning of the tariff.

■■ Clear and unambiguous terms of a bill of lading, the contract between the parties, may not be varied or contradicted by parol evidence. (*Quilico v. Union Oil Co. of Calif.* (1978), 58 Ill. App. 3d 87, 374 N.E.2d 219.) In the present case, the Cicero address is clearly and unambiguously the place of delivery for purposes of the carrier's liability which is fixed by the terms of the bill. (*Georgia, Florida & Alabama Ry. Co. v. Blish Co.* (1916), 241 U.S. 190, 60 L. Ed. 948, 36 S. Ct. 541.) In the present case, however, the carrier's liability is not at issue. The issue is one of the application of charges to shipments delivered to a place satisfactory to all the parties. The question as to the place of delivery is only relevant insofar as it sheds light upon the ultimate issue whether there has been a change in the place of delivery sufficient to give the subject shipments the character of reconsignments or diversions. Where the issue involves ascertaining the character of a shipment, the courts have considered parol evidence as to the parties' intent for that shipment despite contrary terms in the bill of lading. (*Baltimore & Ohio Southwestern R.R. Co. v. Settle* (1922), 260 U.S. 166, 67 L. Ed. 189, 43 S. Ct. 28; *Atchison, Topeka & Santa Fe Ry. v.*

*Harold* (1916), 241 U.S. 371, 60 L. Ed. 1050, 36 S. Ct. 665; *Southern Pacific Transportation Co. v. Interstate Commerce Commission* (9th Cir. 1978), 565 F.2d 615.) The trial court therefore appropriately considered the parties' eight-year arrangement under which each knew that the goods were always intended for one of two rail yards in Chicago.

■■ Under the facts and circumstances of the present case, there was no change in the place of delivery and therefore no reconsignment. From the inception of the carriage, the goods were destined for Chicago. The particular rail yard in Chicago was not designated by Terminal Freight until plaintiff called from the Chicago Terminal where, as a normal custom, it always took shipments to have them rated, and to change drivers. Thus, when Terminal Freight indicated to which rail yard the goods should be delivered that place constituted the original place of delivery as contemplated by the agreement of the parties. *Cf. Trans Ocean Van Service v. United States* (U.S. Ct. Cl. 1970), 426 F.2d 329, *supplemented* (U.S. Ct. Cl. 1973), 470 F.2d 604.

The practice of Terminal Freight of withholding instructions as to the final place of delivery is analogous to that of the shipper in *Southern Pacific Transportation Co. v. Interstate Commerce Commission.* There the issue was whether a shipment, which ultimately spanned more than one State, should be characterized as either an interstate or an intrastate shipment. To determine the character of the shipment the court examined the parties' actual intent at the inception of carriage as to the destination of the goods. The court found that the shipper only intended to send the goods to a point within the same State, and from there to a yet unknown destination. Since at the beginning of the carriage the shipper had not as yet formed the intent to ship the goods out of State, the shipment was characterized as intrastate, despite the fact that some of the shipments were ultimately delivered out of State. In so holding, the court noted that there was no suggestion of subterfuge or fraud.

Similarly here, in the true arrangement between the parties, Terminal Freight did not designate the place of delivery at the inception of the carriage. There is no suggestion that Terminal Freight purposely withheld this instruction in order to circumvent a reconsignment charge. It thus could not be deemed to have changed the place of delivery when it supplied the information to plaintiff at the terminal. Indeed, the fact that the optional places of delivery were both located in Chicago belies any conclusion that a subterfuge was intended. The only consequence of Terminal Freight's practice was that plaintiff performed for it the service of telephoning to receive instructions. We need not address, however, whether this accommodation constituted a discriminatory privilege in violation of the Interstate Commerce Act, since the issue was not raised in the trial court. In this regard, *Union Pacific R.R. Co. v. United States*

(1960), 362 U.S. 327, 4 L. Ed. 2d 766, 80 S. Ct. 737, cited by plaintiff, is inapposite.

■■ Nor do we believe that there was a change in the name of the consignee. Plaintiff maintains that the ultimate delivery of the goods to Conrail at one of the two Chicago rail yards constituted a change in the name of the consignee. The receipts issued by Conrail clearly indicate that it received the goods only as an agent for Terminal Freight. The goods were originally and ultimately consigned to Terminal Freight in care of Conrail. The trial court properly granted summary judgment in favor of defendants.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI, P. J., and WHITE, J., concur.