**MAIN ROAD BAKERY, INC., trading as Upper Krust Bakery, Plaintiff,**

v.

**CONSOLIDATED FREIGHTWAYS, INC., Defendant.**

Civ. A. No. 91–1476.

United States District Court, D. New Jersey.

Aug. 12, 1992.

Alan G. Giebner, Buonadonna & Benson, Vineland, N.J., for plaintiff.

William D. Bierman, Westwood, N.J., for defendant.

## OPINION

BROTMAN, Senior District Judge.

This action arises out of the shipment of a bake oven by the defendant, Consolidated Freightways, Inc. ("Consolidated") to the plaintiff, Main Road Bakery, Inc. trading as Upper Krust Bakery ("Main Road Bakery") which was completely damaged by Consolidated before delivery. Presently before the court is Consolidated's motion for summary judgment.

## I. FACTS AND PROCEDURE

On August 30, 1990, Main Road Bakery, located in Vineland, New Jersey, ordered a Middleby Marshall Direct Gas Fired Revolving Tray Oven ("bake oven") having a capacity of 25 standard size bun pans from Cutler Industries, Inc. ("Cutler"). On September 5, 1990, Cutler delivered the bake oven to Consolidated in Niles, Illinois for transportation and delivery to Main Road Bakery. Also on September 5, 1990, Consolidated issued a bill of lading contract as prescribed and mandated by the Interstate Commerce Commission. The bill of lading stated "Express Delivery" and "Do Not Delay."

On September 7, 1990, Consolidated contacted Terry Cantoni, the President of Main Road Bakery, and informed him that the bake oven was in transit and would be

delivered by 9:00 a.m. on September 10, 1990. Cantoni informed Consolidated that on September 9, 1990, Main Road Bakery would disassemble its existing oven in preparation of the delivery of the bake oven. The bake oven arrived at the Consolidated terminal in Vineland on schedule. Upon unloading from the trailer, a fork lift punctured a 55 gallon drum of the chemical vinzyene, a liquid fungicide. The vinzyene saturated various parts of the bake oven completely damaging it and rendering it a total loss.

In March, 1991, Main Road Bakery brought a suit against Consolidated in the Superior Court of New Jersey, Law Division for negligence. On April 5, 1991, Consolidated removed the suit to this court pursuant to 28 U.S.C. § 1441 and 49 U.S.C. § 11707(d)(2)(A)(iii). Subsequently, on April 23, 1991, Consolidated and Cutler entered into a release and settlement agreement by which Consolidated agreed to pay Cutler $17,835.00 for the physical damage to the oven. In return, Cutler agreed to give up any and all claims which it may have had against Consolidated. Main Road Bakery was not a party to the release and settlement agreement.

In its complaint, Main Road Bakery seeks special damages in an unspecified amount resulting from Consolidated's inability to deliver the bake oven on September 10, 1990. Specifically, it seeks special damages for: 1) the costs of paying installment experts on September 10, 1990; 2) the costs of paying for the exclusive use of a trailer for delivering a replacement bake oven directly from the manufacturer; and 3) lost profits for closing the bakery for approximately seven days until a replacement bake oven could be installed.

## II. DISCUSSION

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judg-

ment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the non-moving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

In its motion for summary judgment, Consolidated argues that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, formerly 49 U.S.C. § 20(11), ("Carmack Amendment")[1]

---

**1.** The Carmack Amendment states in relevant part:

A common carrier providing transportation or service subject to the jurisdiction of the

preempts state common law remedies for negligent damage to goods shipped by a common carrier and that Main Road Bakery's claim for special damages were not foreseeable at the time that the bill of lading contract was made and must be dismissed.

■ Although the Third Circuit has not considered the issue, the other circuits are in agreement that the Carmack Amendment preempts state common law remedies for negligent damage to goods shipped by a common carrier under a lawful bill of lading. *See Underwriters at Lloyds of London v. North American Van Lines*, 890 F.2d 1112, 1115–1121 (10th Cir.1989); *Intech, Inc. v. Consolidated Freightways, Inc.*, 836 F.2d 672, 677 (1st Cir.1987); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir.1987); *Hopper Furs Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1264 (8th Cir.1984); *Air Products & Chemicals v. Illinois Central Gulf Railroad Co.*, 721 F.2d 483, 487 (5th Cir. 1983); *W.D. Lawson & Co. v. Penn Central Co.*, 456 F.2d 419, 421 (6th Cir.1972); *see also Philips Consumer Electronics v. Arrow Carrier Corp.*, 785 F.Supp. 436, 440 (S.D.N.Y.1992); *Pierre v. United Parcel Service, Inc.*, 774 F.Supp. 1149, 1150 (N.D.Ill.1991). These cases rely on the Supreme Court's pronouncement in *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913) that Congress enacted the Carmack Amendment in 1906 to "take possession of the subject [of interstate carriers' liability for property loss], and supersede all state regulation with reference to it...." *Id.* at 505–506, 33 S.Ct. at 152. *Accord New York, New Haven & Hartford Railroad Co. v. Nothnagle*, 346 U.S. 128, 131, 73 S.Ct. 986, 988, 97 L.Ed. 1500 (1953); *Atchison, Topeka & Santa Fe Railway Co. v. Harold*, 241 U.S. 371, 378, 36 S.Ct. 665, 668, 60 L.Ed. 1050 (1916).

■ Even when the Carmack Amendment preempts state common law remedies, special damages are still recoverable under the Carmack Amendment if the carrier had notice of the special circumstances from which such damages would flow at the time the bill of lading contract was made. *Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 765 (9th Cir.1981); *Hector Martinez & Co. v. Southern Pacific Transportation*, 606 F.2d 106, 109 (5th Cir.1979); *Starmakers Publishing Corp. v. Acme Fast Freight, Inc.*, 646 F.Supp. 780, 782 (S.D.N.Y.1986); *Starmakers Publishing Corp. v. Acme Fast Freight, Inc.*, 615 F.Supp. 787, 791 (S.D.N.Y.1985); *see also* 3 Farnsworth on Contracts § 12.14. This allowance for special damages is derived from the seminal case of *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854). In *Hadley*, mill operators shut down their business because the crankshaft of the steam engine was broken. When the carrier was delayed in transporting the broken shaft to a foundry for replacement, the mill operators sued the carrier for lost profits due to the delay. The *Hadley* court disallowed the claim for loss profits since the carrier was not informed, at the time the contract was made, that the mill operators would have to shut down their business. *Id.* at 151; *see also Turner's Farms, Inc. v. Maine Central Railroad Co.*, 486 F.Supp. 694, 699 (D.Maine 1980); Restatement (Second) of Contracts § 351; 5 Corbin on Contracts § 1016.

The court holds that the Carmack Amendment preempts Main Road Bakery's common law claim for negligence. The court also holds that Main Road Bakery's claim for special damages must be dismissed because Consolidated did not have notice at the time the bill of lading contract was made, on September 5, 1990, that its

Interstate Commerce Commission ... shall issue a receipt or bill of lading for property it receives for transportation.... That carrier or freight forwarder and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission ... are liable to the person entitled to recover under the

receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property....
49 U.S.C. § 11707(a)(1). For purposes of this motion, the court will assume that Main Road Bakery is entitled to recover under the bill of lading.

inability to deliver the bake oven on September 10, 1990 would result in these special damages. It was not until September 7, 1990, when the bake oven was already in transit, that Cantoni informed Consolidated that Main Road Bakery would disassemble it existing oven on September 9, 1990 in preparation of the delivery of the bake oven. As a result, Consolidated did not have notice, at the time of contracting, that Main Road Bakery would lose profits from its inability to deliver the bake oven on schedule, that the bakery would hire installment experts on September 10, 1990 or that the bakery would have to pay for the exclusive use of a trailer to obtain a replacement bake oven directly from the manufacturer. As the *Contempo* court held:

> The purpose of this rule [of notice of special damages at the time of contracting] is to enable the carrier to protect itself from special damages by negotiating special contractual terms, declining the shipment, or taking special precautions to avoid the loss. [citations omitted]. Because the carrier is taking the risk that events appreciably beyond its control may prevent it from performing the contract, the carrier is entitled to notice of any unforeseeable consequences of nonperformance so that the carrier can protect itself. [citation omitted]. Notice after the contract is made does not afford opportunity for this self-protection.

*Contempo* at 765.

Moreover, the words "Express Delivery" and "Do Not Delay" on the bill of lading contract did not give Consolidated notice that Main Road Bakery was going to disassemble its existing oven on September 9, 1990. These words also did not notify Consolidated that the bakery was planning on hiring installment experts on the day that the bake oven was scheduled to arrive or that the bakery planned on paying for the exclusive use of a trailer for the delivery of a replacement oven. It would have been reasonable for Consolidated to assume at the time of contracting, without being noti-

fied otherwise, that the bakery would not disassemble it existing oven until the new oven was delivered and that the bakery would have a replacement oven shipped in the same manner if it was unable to deliver the bake oven.

## III. CONCLUSION

For the foregoing reasons, defendant Consolidated's motion for summary judgment is granted.