ADAMS et al. v. CHICAGO GREAT WESTERN R. CO. et al.

(District Court, N. D. Iowa, E. D.    February 3, 1914.)

No. 61.

1. REMOVAL OF CAUSES (§ 25*)—GROUNDS—PETITION.

A suit or action cannot be removed to a federal court as arising under a law of the United States unless such fact appears from plaintiff's petition, and, if it fails so to appear, the omission cannot be supplied by the petition for removal or any subsequent pleading.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 58, 59; Dec. Dig. § 25.*]

2. REMOVAL OF CAUSES (§ 19*)—ACTIONS ARISING UNDER FEDERAL LAW—CARRIERS.

Where a petition against several carriers for loss of an interstate shipment of wool alleged that defendants carried the wool to destination but failed to deliver the same to plaintiffs or notify them of its arrival and failed to account therefor, having either appropriated the wool to their own use or delivered it to some person not authorized to receive the same, did not state a cause of action arising under a law of the United States so as to confer federal jurisdiction because Carmack Amendment, § 7 (Act June 29, 1906, c. 3591, 34 Stat. 593 [U. S. Comp. St. Supp. 1911, p. 1307]), authorized a recovery against the initial carrier for loss sustained through the fault of any carrier whose line formed a part of the through route.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 37–46, 48, 52, 53.; Dec. Dig. § 19.*]

3. COURTS (§ 327*)—FEDERAL COURTS—JURISDICTION.

Where suit was instituted against certain connecting carriers for loss of goods shipped in interstate commerce, the fact that the initial carrier's liability arose solely because of Carmack Amendment, § 7 (Act June 29, 1906, c. 3591, 34 Stat. 593 [U. S. Comp. St. Supp. 1911, p. 1307]), making an initial carrier liable for the default of connecting carriers forming a part of a through route in interstate commerce, was insufficient to confer federal jurisdiction of the controversy between plaintiff and such initial carrier, where the amount in controversy did not exceed the sum or value of $3,000 as provided by Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1091 [U. S. Comp. St. Supp. 1911, p. 135]) § 24a.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 889; Dec. Dig. § 327.*]

At Law.   Action by B. H. Adams and others, copartners doing business as the Adams Seed Company, against the Chicago Great Western Railroad Company and others.   On motion to remand.   Sustained.

This action was commenced in a state court of Iowa by the plaintiffs as copartners, doing business under the name of the Adams Seed Company, against the Chicago Great Western Railroad Company, the Philadelphia & Reading Railway Company, and the Wabash Railroad Company, November 10, 1913, to recover from them jointly $1,500 as damages for the alleged loss of certain goods which the plaintiffs say they delivered to the defendants as common carriers to be carried from a point in Iowa to Philadelphia, Pa.; there to be delivered to the plaintiffs.   The suit was removed to this court upon separate petitions of the defendants Chicago Great Western Railroad Company and the Wabash Railroad Company, alleging that the "cause of action sued upon is one arising under the act to regulate commerce."   The plaintiffs move to remand upon various grounds, one· of which is that the cause of action alleged in the petition is not one arising under the "act to regulate com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

merce," or any other law of Congress; that the amount involved is less than $3,000 exclusive of interest and costs; and that this court has no jurisdiction of the controversy.

John McCook, of Cresco, Iowa, for plaintiffs.

Reed & Pergler, of Cresco, Iowa, and Carr, Carr & Evans and Miller & Wallingford, all of Des Moines, Iowa, for defendants.

REED, District Judge (after stating the facts as above). The plaintiffs in their petition allege, in substance: That in May, 1909, they delivered to the defendants therein named a quantity of wool of the value of $1,500 at McIntire, Iowa, a station on the line of the Chicago Great Western Railroad Company, without any written agreement or bill of lading issued therefor, to be shipped by the defendants from said station to Philadelphia, Pa., there to be delivered to the plaintiffs; that defendants carried said wool to its destination, but failed to deliver the same to the plaintiffs or notify them of its arrival at Philadelphia, and have failed to account to them therefor, and have either appropriated the said wool to their own use, or have delivered the same to some person not authorized to receive the same. Judgment is asked against the defendants for the value of the wool, viz., $1,500, with interest and costs. The defendants Chicago Great Western Railroad Company and the Wabash Railroad Company in due time filed separate petitions to remove the action to this court upon the ground, as alleged therein, that the plaintiffs were, when the suit was commenced, citizens of the state of Iowa, and the defendants corporations of Illinois and Missouri, respectively; and "that the cause of action alleged by plaintiffs in their petition is one arising under a law regulating commerce, to wit, section 20 of the Interstate Commerce Act as amended by the Act of June 29, 1906."

The defendant Philadelphia & Reading Company filed a motion in the state court to dismiss the action as to it upon the ground that it had not been served with notice of the action within the state of Iowa, and that it was not doing business in said state, but subsequently withdrew said motion; and it was not ruled upon in the state court. After such withdrawal the state court ordered the removal of the cause to this court upon the petitions of the Chicago Great Western Railroad Company and the Wabash Railroad Company. The Philadelphia & Reading Company did not join in either of said petitions, nor file a separate petitition to remove the action and does not appear in this court.

The plaintiffs move to remand upon the grounds, among others:

"That the cause of action alleged in the petition is not one arising under the 'act to regulate commerce,' or any other law of the United States."

[1] It is settled by numerous decisions of the Supreme Court of the United States that a suit or action cannot be removed from a state court to the United States court upon the ground that it arises under a law of the United States unless such fact appears from the plaintiff's petition; and, if it fails to so appear, the omission cannot be supplied by the petition for removal, or in any subsequent pleading in the

case.  Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511, and subsequent cases.

[2]  It may not be necessary to refer in the petition to any particular law of the United States under which the cause of action is claimed to arise, for the court takes notice of the laws of the United States; but it is necessary to allege facts, and not mere conclusions, by which the court may know from the facts alleged that the cause of action is one that arises under some law of the United States.  There is nothing in the plaintiff's petition in this case that indicates even remotely that the cause of action there alleged arises under the "act to regulate commerce" or under the Constitution, or any law or tre~'y of the United States; nor does it appear that the wool which it claims to have delivered to the railroad companies at McIntire, Iowa, to be carried to Philadelphia, was lost in transit, for it is alleged that the wool was carried to its destination by the defendants, that they failed to deliver the same to the plaintiffs after its arrival there, failed to notify them of such arrival, and that they have either appropriated the same to their own use, or delivered it to some one not authorized to receive it.  The cause of action therefore, as alleged by the plaintiffs, cannot rightly be held to be one arising under the "act to regulate commerce" or any other law of the United States.

But if it did appear from the plaintiff's petition that the wool was delivered by them to the Chicago Great Western Railroad Company at McIntire, Iowa, to be carried in interstate commerce to its destination in Pennsylvania, a point beyond its own line through connecting carriers as its agents, and was lost or damaged in transit either upon its own line or that of the connecting carriers, such loss or injury could not be attributed to any violation of the act to regulate commerce; and an action to recover for such loss would not therefore be one arising under that act as amended by that part of section 7 of the act of June 29, 1906 (34 Stat. 593) commonly called the "Carmack amendment," as claimed by the removing defendants in their respective petitions for removal; but would only be one to recover from the primary carrier upon its common-law carrier liability for an injury to or loss of the property occurring upon its own line or that of a connecting carrier as its agent in carrying the property to its destination. Galveston, H. & S. A. R. Co. v. Wallace, 223 U. S. 481, 490, 32 Sup. Ct. 205, 56 L. Ed. 516.

The so-called Carmack amendment, as construed by the Supreme Court, declares only that a common carrier engaged in interstate commerce, who receives property for transportation from a point on its own line to a point in another state beyond its line, shall be deemed to have contracted for through carriage to the point of destination, using the lines of connecting carriers as its agents; and forbids such carrier from making any contract, receipt, rule, or regulation which shall exempt it from the liability thereby imposed.  In Atlantic Coast Line Ry. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, the Supreme Court said:

"The general doctrine accepted by this court, in the absence of legislation, is that a carrier, unless there be a special contract, is only bound to carry over its own line and then deliver to a connecting carrier.  That such an

initial carrier might contract to carry over the whole route was never doubted. It is equally indisputable that, if it does so contract, its common-law carrier liability will extend over the entire route."

It then holds that an action to recover damages for an injury to or loss of property so received by an interstate carrier is a loss or injury in no way attributable to any violation of the provisions of the act to regulate commerce; but is one only to recover upon its common-law liability as such carrier.

In Galveston, H. & S. A. Ry. Co. v. Wallace, above, the court in speaking of the Carmack amendment said:

"Wherever the carrier voluntarily accepts goods for shipment (under that amendment) to a point on another line in another state, it is conclusively treated as having made a through contract. It thereby elected to treat the connecting carriers as its agents, for all purposes of transportation and delivery," and must "be treated as though the point of destination was on its own line, and is to be governed by the same rules of pleading, practice, and presumption as would have applied if the shipment had been between stations in different states, but both on the company's railroad. * * * But damages caused by a failure to deliver goods is in no way traceable to a violation of the statute, and is not therefore within the provisions of sections 8 and 9 of the act to regulate commerce. * * *"

The cases of Schlemmer v. Buffalo, Rochester, etc., Ry., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681, and Macon Grocery Co. v. Atlantic Coast Line R. Co., 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300, do not support the contention of the defendants. The Schlemmer Case was to recover damages resulting from a failure to equip a car, upon which the plaintiff's intestate was killed, with a coupler as required by the safety appliance act of Congress. It was therefore a cause of action directly arising from a violation of that act.

The Macon Grocery Co. Case was a suit in equity to restrain the interstate carriers named as defendants from putting into effect upon their respective roads advances in freight rates, which it was alleged would be in direct violation of the act to regulate commerce. In each case, therefore, the cause of action alleged was directly traceable to an alleged violation of a law of the United States, viz., (1) the safety appliance law of Congress (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), and (2) the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]).

In the Macon Grocery Co. Case, however, it was held that the Circuit Court was without jurisdiction of the suit because it was not brought in a district of which some of the defendants were inhabitants (it not being founded alone upon the diverse citizenship of the parties); but the decree of the Court of Appeals was affirmed, because that court had directed the dismissal of the bill without prejudice.

It seems entirely clear, therefore, that a failure of the initial carrier in interstate commerce to pay for the alleged loss of goods occurring upon its own line or the line of a connecting carrier while in transit violates no provisions of the act to regulate commerce, any more than its failure to pay any other obligation it might owe not arising from some violation of such act; and an action to recover for such loss is not one arising under that act.

[3] It may be said that this only goes to the merits of the controversy, or the right of the shipper to recover, and not to the jurisdiction of the federal courts to determine the controversy; and in behalf of the Chicago Great Western Company it is urged that the Carmack amendment, so called, imposes upon it a liability for the loss of the property in question occurring upon the line or lines of the other defendants as its agents in carrying the property to its destination and for which it would not be liable but for that amendment, and that the action is therefore one arising under the Carmack amendment to recover from it for the alleged loss of the wool, though such loss may not be attributable to any violation of the act to regulate commerce, and is therefore one arising under that amendment as a law of the United States to recover upon its liability for the loss of the wool. If this appeared from the plaintiff's petition, the contention would be forceful; but in that event the amount in controversy must exceed the sum or value of $3,000 to confer jurisdiction upon this court of the action. Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1091 [U. S. Comp. St. Supp. 1911, p. 135]) § 24a. This section but re-enacts the judiciary act of 1887–88 upon the question of jurisdiction of the federal courts as construed by the Supreme Court in United States v. Sayward, 160 U. S. 493, 16 Sup. Ct. 371, 40 L. Ed. 508, and in substantially the language of the court in that case, save only the proviso "that the sum or value of the amount in controversy shall not apply to the cases mentioned in the succeeding paragraphs of the section" including the eighth. But the cases mentioned in paragraph 8 do not apply to causes of action that are not attributable to some violation of the act to regulate commerce. Storm Lake Tub & Tank Factory v. M. & St. L. Ry. Co., 209 Fed. 895.

Inasmuch therefore as it does not appear from plaintiff's petition that recovery is sought for any violation of the act to regulate commerce, and the amount involved is not sufficient to confer jurisdiction upon this court of a cause of action arising under any other applicable law of Congress, the motion to remand must be sustained, and the action remanded to the state court from which it was removed. It is accordingly so ordered.