**WHITE CROSS HOSPITAL, Plaintiff-Appellant, v. CHESAPEAKE & OHIO RAILWAY CO., Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 4916.   Decided November 9, 1953.

346

Walter Siemer, Columbus, for plaintiff-appellant.
Wilson & Rector, Harrison W. Smith, Jr., of Counsel, Columbus, for defendant-appellee.

NICHOLS, J, of the Seventh District, PUTNAM, PJ, MONTGOMERY, J, of the Fifth District, sitting by designation.

## OPINION

By NICHOLS, J.

Plaintiff instituted this action in the Municipal Court of Columbus, Ohio, against the defendant, a common carrier engaged in transporting persons and property, praying for damages to goods in transit over defendant's railroad from Kenosha, Wisconsin, to Columbus, Ohio, under a Uniform Bill of Lading provided for in the Federal Act governing such carriage.

After alleging the corporate capacities of the parties, plaintiff in its petition alleged that

"on or about July 8, 1950, Simmons Company of Kenosha, Wisconsin, delivered to defendant at its siding in Kenosha, Wisconsin, a shipment of furniture, represented by invoice number K 50474 L, to be safely transported to Columbus, Ohio, a station on said railroad and to be delivered to White Cross Hospital, the plaintiff herein; that said furniture was subsequently received and accepted by plaintiff; that defendant was paid the regularly authorized scheduled rates for the transportation of said furniture."

Plaintiff further alleged that

"the defendant did not safely carry and transport said furniture from Kenosha, Wisconsin, to Columbus, Ohio, and deliver the same without damage to said plaintiff as it agreed to do, but that the following articles of furniture were damaged as described below."

The petition then sets forth a list of the furniture claimed to be damaged.

Plaintiff further alleged that

"said furniture was reasonably worth $286.60, at the time of delivery to defendant at Kenosha; that said furniture was valueless to plaintiff at the time of delivery to it; that defendant was notified of such damage and that defendant accepted said damaged furniture from the plaintiff. Plaintiff has since demanded payment of the sum of $286.60 from defendant and the defendant has refused and still refuses to pay said sum."

Plaintiff prays judgment against the defendant in the sum of $286.60 with interest and costs.

The defendant answered and after admitting the corporate capacity of plaintiff, its own corporate capacity, and that it was operating a railroad as a common carrier for the transportation of freight and passengers for hire, into and through and out of the State of Ohio and to various points within and without the State of Ohio, for its first defense denied each and every allegation of the petition.

For its second defense the defendant says

"that, if the shipment was made as alleged in the petition, the carriage of said goods by the defendant was pursuant to a contract known as a Uniform Domestic Straight Bill of Lading. By the terms of said contract it was provided that as a condition precedent to recovery by the plaintiff, claim must be filed in writing with the receiving or delivering carrier or carrier issuing the bill of lading or carrier on whose line the loss, damage, injury, or delay occurred, within nine months after delivery of the property."

Defendant further alleged:

"that plaintiff failed to comply with the terms of said contract in that it filed no claim for loss or damage with defendant or any other carrier within nine months after delivery of the property."

The defendant prayed that it may go hence without day and recover its costs.

For reply to defendant's second defense plaintiff alleged

"that defendant did not furnish said plaintiff with a copy of the alleged contract under which the carriage of said goods was supposedly made; that on or about July 8, 1950, plaintiff notified defendant of possible damage to the said goods, the extent of which could not reasonably be ascertained for some time; that defendant's agent informed plaintiff that when the extent of the damage could be ascertained the defendant should be notified; that on or about May 20, 1951, the earliest time within which the full extent of the damages could be ascertained, plaintiff did so notify the defendant of the extent of said damages; that defendant's agent investigated the said damage at that time and did represent that the claim would be paid in due time. Plaintiff relied on the conduct and representations of said defendant in not presenting its claim in writing within nine months after delivery of the said goods.

"Wherefore, plaintiff prays that the defendant be estopped from setting up the second defense and that plaintiff recover according to the prayer in its petition."

To plaintiff's reply the defendant demurred "because on its face it is insufficient at law." The trial Court sustained this demurrer, and the plaintiff not desiring to plead further and the case coming on further to be heard on the motion of the defendant made in open court for judgment on the pleadings, the trial Court sustained such motion and ordered and adjudged that the petition be dismissed and that the defendant go hence without day and recover its costs. Exceptions were duly entered by the plaintiff and appeal was duly prosecuted to this Court of Appeals.

There can be no doubt but that the action is governed by the Federal Act. Much time and effort has been expended by counsel for the parties in attempting to differentiate between waiver and estoppel, but both parties agree that the carrier cannot waive the provisions of the contract of carriage. However, plaintiff earnestly contends that by its conduct as related above, defendant became "estopped" from defending the action on the ground that plaintiff failed to file written notice of its claim within nine months from the date of delivery of the goods. Thus the issue before this Court is clearly defined as follows: "Under the contract designated as the Uniform Domestic Straight Bill of Lading may the carrier be estopped by its alleged conduct inducing the plaintiff to fail to have written notice given to defendant of its claim for damages within nine months from the date of the delivery of the goods upon which conduct the plaintiff relied?"

The demurrer admits that plaintiff did notify defendant on July 8, 1950, a day within nine months from the delivery of the goods, of possible damage to the goods, the extent of which could not be ascertained for some time and that defendant's agent informed plaintiff that when the extent of the damage could be ascertained the defendant should be notified. The demurrer also admits that plaintiff did notify defendant of the extent of the damage on or about May 20, 1951, which was the earliest time within which the full extent of the damage could be ascertained. The demurrer also admits that the defendant at that date, to wit, May 20, 1951, investigated the damage and at that time did represent that the claim would be paid in due time.

The demurrer also admits that plaintiff relied on the conduct and representations of the defendant in not presenting its claim in writing within nine months after delivery of the goods.

It will be noticed that nowhere in the reply of the plaintiff to the second defense of the answer does the plaintiff claim that the defendant's agent told the plaintiff that it need not file its claim in writing when the extent of the damage would be ascertained. It follows that there was no conduct of the defendant's agent upon which plaintiff could rely for its failure to file its claim in writing.

Whether the defendant furnished plaintiff with a copy of the alleged contract under which the carriage of the goods was made is immaterial since plaintiff was bound with knowledge of the provisions of the Uniform Bill of Lading which had been filed with the Commission and approved by it. There is no denial that the shipment was made upon a Uniform Bill of Lading, as required by the law. Plaintiff was, therefore,

bound with knowing that it was required to make its claim for damages in writing and apparently there was nothing said by the agent of the Railroad Company from which the plaintiff could properly claim that it was misled by the defendant in failing to make its claim in writing. It may well be that estoppel does not arise in this case at all. That plaintiff did rely upon what was said by the agent of the Railroad Company is admitted but whether it had the rignt to rely thereon is not admitted by the defendant. It seems perfectly clear that while the plaintiff may have relied upon the representations of the defendant's agent that it need not file its claim within nine months, the plaintiff, under the circumstances shown in this case, did not have any right to claim that the Railroad Company had estopped itself from requiring that the plaintiff's claim be filed in writing. The provision in the contract of carriage requiring any claim of damage in course of the transportation be made in writing is a reasonable requirement, to the end that the Commission may have specific knowledge whether there has or has not been any conduct upon the part of the Railroad Company tending to show that it has given or granted some privilege to one shipper which it would not give to another, the purpose of the Act being to prevent discriminations in any manner between shippers.

However, it seems from the briefs and arguments of counsel for the Railroad Company that its sole contention is that the Railroad Company can neither waive any provision of the contract of carriage, estop itself from claiming violation of the provisions of the contract or in any other manner permit deviation from the requirements of the contract as approved by the Commission. As stated above, the Act is to be construed by the Federal Courts and not by the State Courts. The State Court is not privileged to determine that the requirement of the carriage contract as to filing claims in writing or within nine months from the date of delivery is an unreasonable rule or requirement. Indeed, in Chesapeake & Ohio Railway Co. v. Martin, 283 U. S. 211, Mr. Justice Sutherland criticized the State Court of Virginia because it followed its own prior decision and ignored the decision of the United States Court, saying,

"This lawfully it could not do, and the question, as we have shown being a Federal question to be determined by the application of Federal law. The determination by this Court of that question is binding upon the state courts and must be followed, any state law, decision, or rule to the contrary notwithstanding."

In the last cited case it is held in the syllabus:

"1. The question whether a provision in an interstate bill of lading limiting the time for filing claim for loss of property has been complied with is a federal question, to be determined by the application of federal law."

In the opinion, at page 222 the Court states:

"It is held by this court that the shipper may not invoke the doctrine of estoppel against the right to collect the legal rate, because to do so would be to avoid the requirement of the law as to equal rates. Pittsburgh, C., C. & St. L. Ry. Co. v. Fink, 250 U. S. 577, 582; Louisville & N. R. Co. v. Central Iron Co., 265 U. S. 59, 65, and cases cited. These decisions lend support to our conclusion in respect of the matter here. Whether under any circumstances the shipper may rely upon that doctrine in avoidance of the time limitation clause of the bill of lading, we need not now determine. But the Blish Company case makes clear that the fact that delivery was made contrary to instructions, due to the misunderstanding or negligence of the carrier, cannot successfully be set up as an estoppel against the claim of a failure to comply with the requirement of the bill of lading here involved. To allow it would be to alter the terms of a contract, made in pursuance of the Interstate Commerce Act and having, in effect, the quality of a statute of limitation, and thus to open the door for evasions of the spirit and purpose of the act to prevent preferences and discrimination in respect of rates and service. Compare A. J. Phillips Co. v. Grand Trunk Western Ry. Co., 236 U. S. 662, 667."

By analogy of reasoning we believe it is safe to assume that the Federal Court would hold that the doctrine of estoppel cannot apply in this case.

Counsel for the plaintiff has urged that at least indirectly the Federal Court in the cited case has held that under certain circumstances the doctrine of estoppel may apply since that Court in the last quoted paragraph of the opinion says:

"Whether under any circumstances the shipper may rely upon that doctrine in avoidance of the time limitation clause of the bill of lading, we need not now determine."

It would seem, however, that this Court of Appeals may not undertake to say that the provision in the bill of lading involving the shipment in this case may be ignored, since to do so would be to usurp the functions of the Federal Court. We believe the Supreme Court of the United States has determined the precise question involved in this appeal. In the case of Georgia, Florida & Alabama Railway Company v. Blish Milling Company, 241 U. S. 190, the Supreme Court stated in the opinion:

"There is, however, a further and controlling consideration. We are dealing with a clause in a bill of lading issued by the initial carrier. The statute cast upon the initial carrier responsibility with respect to the entire transportation. The aim was to establish unity of responsibility. * * * The clause (with respect to notice of claims) * * * gave abundant opportunity for presenting claims, and we regard it as both applicable and valid. * * * the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal act; **nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations.** A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed. * * * We are not concerned in the present case with any question as to the applicability of the provision, and its validity, and as we find it to be both applicable and valid, **effect must be given to it.**" (Emphasis supplied.)

There can be no doubt that the provision of the bill of lading requiring the plaintiff to file any claim it may have for damages in shipment is an applicable and valid requirement, and in accordance with the cited case this Court must give effect thereto. This is but another way of saying that neither by waiver, by conduct creating an estoppel or in any other manner can the Railroad Company deviate from the requirement of the contract. It is the conclusion of this Court that even though the act of the agent of the Railroad Company in doing the things alleged in plaintiff's reply to the second defense set up in its answer may have been sufficient to create an estoppel in a case where only state law is to govern, nevertheless we are not privileged to recognize that any such estoppel can in any manner affect the provisions of the Uniform Bill of Lading.

It is proper to observe that although the plaintiff may have in fact relied upon the conduct of the defendant in failing to file its claim in writing within nine months as provided in the bill of lading, the question of **the right of the plaintiff to so rely** is to be determined by the Federal Act.

It is the conclusion of this Court that the plaintiff cannot prevail and that being the judgment of the Municipal Court wherein it sustained the demurrer filed by the defendant, its judgment must be and is affirmed.

PUTNAM, PJ, MONTGOMERY, J, concur.