**SYLGAB STEEL & WIRE CORP.,**
**Plaintiff,**

v.

**STRICKLAND TRANSPORTATION COMPANY, Inc., Defendant.**

**No. 67 Civ. 316.**

United States District Court
E. D. New York.

June 28, 1967.

Spencer & Tunstead, New York City, for plaintiff; Edgar A. D. Spencer, New York City, of counsel.

George A. Nagle, Jamaica, N. Y., for defendant.

## OPINION AND ORDER

WEINSTEIN, District Judge.

The issue posed by this motion to remand (section 1447 of title 28 of the United States Code) is whether this Court has jurisdiction over an action for damages to machinery shipped by motor carrier in interstate commerce because it is one "arising under" federal law. 28 U.S.C. §§ 1337, 1441, 1445. Armed with equally impressive strings of citations, the parties dispute over whether the action necessarily is based upon the 1906 Carmack amendment to the Interstate Commerce Act. 49 U.S.C. § 20(11). It seems surprising to find this question so earnestly argued more than sixty years and hundreds of millions of shipments after the statute was adopted.

The complaint alleges that the plaintiff delivered in New York a number of machines in good condition to the defendant, "a common carrier of goods for hire," and paid "its full charges" for transportation to New Orleans. A "uniform straight bill of lading" was issued. Damaged machinery was delivered. Defendant, after inspection, "specifically authorized and directed the plaintiff to repair" the machinery and "bill the defendant for its expenses." Although some $1,900.00 was spent on repairs, one of the machines "cannot be restored." In view of the "negligence, carelessness and improper conduct of defendant," plaintiff claims damages in the total sum of $7,290.94 together with costs and disbursements.

The action was begun in the Supreme Court, Queens County, and removed to this Court. Plaintiff's moving papers state that "the cause of action alleged in the complaint is one for a breach of a common law contract for the carryage of goods * * * and no provision of any statute, federal or state, is involved." It indicates that "in this action, the issues are only issues of fact."

Subdivision (b) of section 1441 of title 28 permits removal of any "civil action in which the district courts have original jurisdiction founded on a claim or right arising under the * * * laws of the United States". Section 1337 of title 28 grants the District Courts "original jurisdiction of any civil action or proceeding arising under any act of Congress regulating commerce." As pointed out by Professor Moore, the problem in relation to 1337—the commerce section— is essentially the same as in the general federal question section, 1331. See 1 Moore's Federal Practice, par. 0.60[8.-3]. Subdivision (b) of section 1445 of title 28 makes non-removable a "civil action in any State court against a common carrier * * * to recover damages for * * * injury of shipments, arising under section 20 of Title 49 * * * unless the matter in controversy exceeds $3,000, exclusive of interest and costs." Concededly, the amount claimed is over $3,000.00 so that the question is whether

the claim is one "arising under" federal law.

■ It is elementary that the plaintiff has the perogative of determining the theory of his action. See, e. g., Bell v. Hood, 327 U.S. 678, 681, 66 S.Ct. 773, 90 L.Ed. 939 (1945). "[T]he party who brings a suit is master to decide what law he will rely upon, and * * * does determine whether he will bring a 'suit arising under' the * * * [laws] of the United States by his [complaint]." The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1912). In "the absence of a fraudulent purpose to defeat removal, the plaintiff may by the allegations of his complaint determine the status with respect to removability of a case, arising under a law of the United States". Great Northern Ry. Co. v. Alexander, 246 U.S. 276, 282, 38 S.Ct. 237, 239, 62 L.Ed. 713 (1918).

■ Given the flexibility of federal rules of procedure allowing wide ranges of proof and recovery on sparsely pleaded and inherently ambiguous complaints (Federal Rules of Procedure 8(a), 15(b), 54(c)), and the hazards of predicting at the pleading stage what, if any, substantive right of plaintiff will be found to have been violated, it is difficult to gainsay a plaintiff. He presumably knows better than anyone else what the theory of his complaint was when he drafted it. Where plaintiff strenuously argues that he is not relying on any federal substantive right and no reference to federal provision is made in his complaint, defendant has a substantial burden of persuading the court that the plaintiff mistakes the gravamen of his complaint. The question of whether, were we to remand on the ground that plaintiff is not relying on any federal substantive right, he could modify his position and recover on a federal theory raises hypothetical questions of estoppel not presently before us. The mere fact, however, that plaintiff makes no specific reference to federal law in his pleading, and strenuously objects to the inference that his cause of action is so based, cannot be decisive in determining jurisdiction.

Posed by the motion are three questions. If plaintiff is correct in his answers to any of them, the motion to remand must be granted. First, what does "arising under" mean? Plaintiff says it means only that the interpretation of a federal statute is involved and not that the substantive right is provided by federal law. Second, what is the scope of the federal law? Plaintiff argues that it covers only those matters specifically dealt with in the Carmack amendment—limitations on liability and responsibility of originating carrier for connecting carrier delicts—and not all aspects of liability for damage to goods carried under an interstate bill of lading. Third, does federal substantive law cover agreements with respect to repair of damaged goods after arrival? Plaintiff's position is that promises for payment for damages and arrangements for repairs made subsequent to delivery, whether on a theory of novation or otherwise, are governed by state common law.

## WHAT DOES "ARISING UNDER" MEAN?

■ Citing volume and page, plaintiff urges that "in all cases decided by, or approved by, the Supreme Court of the United States * * * [holding that the district court has federal question jurisdiction] the action must be one in which the recovery would be defeated by one construction of the statute or sustained by a contrary construction of the statute." Since there are, according to plaintiff, only issues of fact, there is no need to construe a federal law and thus no jurisdiction. This is a mistaken reading of cases such as Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936). As Hart and Wechsler succinctly put the matter: "That an action arises under federal law if the plaintiff asserts a federally-created cause of action seems plain. The problem of jurisdiction when the controversy in such a case relates solely to questions of fact has bemused some commentators but few courts." The Federal Courts and

the Federal System, 763 (1953). What is usually meant by language such as relied upon by plaintiff is that for a case to be one which "arises under federal law," the federal substantive element must be at least sufficiently central to the dispute that it will have some impact on its outcome. If, no matter what interpretation is given to the federal law, it can have no effect on the lawsuit then it cannot be "an essential" element of the plaintiff's cause of action. See A. L.I., Study of the Division of Jurisdiction Between State and Federal Courts, Tent. Draft No. 5, p. 75 (1967) ("The requirement suggested by these decisions . . . is a common-sense limitation of the statutory jurisdiction").

At one end of the spectrum of litigation in this country is a relatively small number of instances—including the case before us—where federal law has preempted the field and federal question jurisdiction is clear. At the other end are cases where the federal content is so miniscule as to require us to ignore that ingredient for jurisdictional purposes if we are to maintain the approximate present "distribution of power between national and state governments" and in the "daily workings" of federal and state courts. Mishkin, The Variousness of "Federal Law", Competence and Discretion in the Choice of National and State Rules for Decision, 105 U. of Pa.L.Rev. 797, 812 (1957).

In between lie the less clear areas— not involved in the present case—where sophisticated federal question tests are sometimes applied. It has been suggested that in this middle ground a cause of action be found to arise under federal law in order for the federal courts to decisively address themselves to a difficult issue of law of first importance; the "major questions of construction" having been decided (T. B. Harms Co. v. Eliscu, 339 F.2d 823, 827 (2d Cir. 1964)), future litigations involving only factual disputes might, it has been intimated, then be relegated to state issue status. Cf., Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Whether such an approach reflects a confusion with substantial question tests more appropriate for appellate and three judge jurisdiction questions than for federal question district court jurisdiction matters is not here a matter of concern.

■ Subtle language and techniques for probing the heart of complex federal issue questions are confusing when applied to legal abrasions such as the one before us. This action is but one of the bulk of federal question litigations which turn not on interpretations of law but on issues of fact. As the Court of Appeals for the Second Circuit recently pointed out, the many infringement suits that depend only on some point of fact and require no construction of federal law, still arise out of that law. T. B. Harms Company v. Eliscu, 339 F.2d 823, 826 (2d Cir. 1964). Even, therefore, if plaintiff is correct in predicting that there will be no dispute about the law but only about the facts in this case, this does not mean its claim does not arise out of federal law. Hartford Fire Ins. Co. v. Kansas City, M. & O. Ry. Co., 251 F. 332, 333–334 (N.D.Tex.1916) (specifically rejecting contention in cases involving damage to interstate shipments that there must be a dispute as to statute's construction for a suit to "arise under"); McGoon v. Northern Pacific Railway Co., 204 F. 998, 999 (D.N.D. 1913) (if the Carmack amendment "does not give plaintiff a right of recovery, he has none"). To determine the extent to which substantive rights of shippers and carriers with respect to damaged goods are governed by federal law we turn to our second question.

## WAS THE CARMACK AMENDMENT DESIGNED TO COVER ALL DISPUTES ARISING FROM A BREACH OF A BILL OF LADING AGREEMENT FOR INTERSTATE CARRIAGE OF GOODS?

■ At this late date there can be little doubt that paragraph 11 of section 20 of title 49 of the United States Code— the Carmack amendment—pre-empts the field and supercedes all state common law

rights. It provides that "[a]ny common carrier * * * shall be liable * * * for the full actual * * * damage * * * to * * * property" being shipped in interstate commerce. This provision and chapter 4 of title 49 dealing with bills of lading issued by common carriers was designed to avoid the "confused situation" arising from differences in substantive rights under the laws of the various states. 4 Williston on Contracts, 3194 (revised ed. 1936). Despite some earlier intimations to the contrary (cf., Atlantic Coast Line v. Riverside Mills, 219 U.S. 186, 208, 31 S.Ct. 164, 55 L.Ed. 167 (1911); Adams v. Chicago Great Western R. Co., 210 F. 362 (N.D.Iowa 1914)), it is now clear that "the federal government entered and pre-empted the field of liability for interstate shipments, even though in a particular case the plaintiff, but for the Carmack Amendment, could have recovered at common law." Nelms, Kehoe & Nelms v. Davis, 277 F. 987, 988 (S.D. Texas 1921). See also, e. g., Missouri P. R. Co. v. Elmore & Stahl, 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); Peyton v. Railway Express Agency, 316 U.S. 350, 352, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942). "[The] Liability of a carrier for damage to an interstate shipment is a matter of federal law controlled by federal statutes and decisions." Missouri P. R. Co. v. Elmore & Stahl, supra. The "prime object" of the Carmack amendment was to "bring about a uniform rule of responsibility as to interstate commerce and interstate commerce bills of lading" so that state law "on that subject has been excluded." Atchison, Topeka & S. F. Ry. v. Harold, 241 U.S. 371, 378, 36 S.Ct. 665, 668, 60 L.Ed. 1050 (1916).

 Although plaintiff in his moving papers and brief makes much of the fact that defendant was not one of a series of connecting carriers, paragraph (11) of section 20 clearly applies to the interstate shipment of a single carrier. Peyton v. Railway Express Agency, 316 U.S. 350, 352, 62 S.Ct. 1171, 1172 (1941) ("a suit brought against a single inter-state carrier for its negligent non-delivery * * * has its origin in and is controlled by" the Carmack amendment); Nelms, Kehoe & Nelms v. Davis, 277 F. 987, 988 (S.D.Tex.1921) ("any suit, brought against any carrier on interstate shipments under a through bill of lading, is * * * 'pervaded from its origin to its close by United States law and United States authority.' ").

Congressional understanding of the comprehensive nature of federal substantive regulation of the rights of shippers and carriers with respect to damaged goods is clear beyond peradventure. In a Congressional report recommending adoption of the forerunner of subdivision (b) of section 1445 of title 28, which adopted the $3,000.00 requirement for removal from state courts of actions against common carriers to recover for damages to injury of shipments "arising under section 20 of title 49" [the Carmack amendment], the matter was thoroughly discussed. See Removal of Causes to Federal Courts, Report to Accompany H. R. 9994 by Mr. Dyer from the Committee on the Judiciary, H.R.Rep. No. 120, 63rd Cong., 2d Sess., 1913. The report flatly states:

"In Adams Express Co. v. Croninger (226 U.S., 491, 33 S.Ct. 148, 57 L. Ed. 314) it was held that section 20 of the interstate-commerce act as amended by the act of June 29, 1906, abrogates all State and common law liabilities on interstate shipments of property. If in any case this statute does not give the plaintiff the right of recovery, he has none. That being true, all cases against railroad companies for loss or damage on interstate shipments of necessity must arise under a 'law regulating commerce.' " (Emphasis supplied.) Id. at p. 2.

What is true of railroads in this respect is true of truck lines. The report notes that:

"The condition of the law * * * was not called to the attention of the bar and the courts until May 14, 1913, when Judge Amidon handed down the decision of McGoon v. Northern Pacif-

ic Railway Co., United States District Court of North Dakota, reported in 204 Federal Reporter, 998.

\* \* \* \* \* \*

It was held that a suit by a shipper against a railroad company to recover for damages or injury to property while being transported in interstate commerce is one arising under the interstate-commerce act as amended, of which a Federal district court is given exclusive jurisdiction by the judicial code, which confers jurisdiction on such courts of all suits and proceedings arising under any law regulating commerce; and such a suit is removable. \* \* \* "

As a result of the *McGoon* decision there were hundreds of minor cases removed from the state courts. On the complaint of many lawyers and judges, the $3,000 requirement was then adopted. There has been no substantial change in the applicable law since 1913.

## IS A POST DELIVERY AGREEMENT FOR REPAIR OF DAMAGED GOODS REGULATED BY FEDERAL LAW?

It may be, of course, that though the cause of action had its genesis in a bill of lading and interstate shipment the actual dispute is peripheral to this original agreement for carryage and that the state law governs the dispute. *Compare* Toho Bussan Kisha, Ltd. v. American Pres. Lines, Ltd., 265 F.2d 418 (2d Cir. 1959) (misrepresentation involving a bill of lading governed by New York Law) and T. B. Harms Co. v. Eliscu, 339 F.2d 823, 827 (2d Cir. 1964) (question involving copyright dispute does not raise a "pivotal question of federal law") *with* Indussa Corp. v. S. S. "Ranborg," 377 F.2d 200, 202 (2d Cir. 1967) (excluding federal court jurisdiction would "[lean] too heavily on general principles of contract law and [give] insufficient affect to the enactments of Congress governing bills of lading").

 State and federal courts have properly been reluctant to divide the relationship between interstate shippers and carriers into discrete parts, some governed by federal and some by state law. See Emery & Co. v. American Refrigerator Co., 246 U.S. 634, 38 S.Ct. 414, 62 L.Ed. 912 (1918); Atchison & Topeka Ry. v. Harold, 241 U.S. 371, 376, 36 S.Ct. 665, 60 L.Ed. 1050 (1916) (second agreement for intrastate shipment not "new and distinct"); National Garment Co. v. New York, C. & St. L. R. Co., 173 F.2d 32 (8th Cir. 1949) (collateral insurance contract does not supercede obligations under bill of lading); White Cross Hospital v. Chesapeake & Ohio Railway Co., 125 N.E.2d 363, 366 (Ct.App. Ohio 1953) (rules with respect to filing of claims subject to federal law); Schaefer, Inc. v. Minneapolis, Northfield & So. Ry. Co., 254 Minn. 248, 94 N.W.2d 551, 558 (1938) (original bill of lading "governs the entire transportation"). The courts tend to view events in interstate commerce as part of a total transaction which extends beyond the actual movement across state lines. As in *Emery*, so in the instant case. "In no aspect can it be maintained that any count attempts to allege a primary liability of the defendant \* \* \* otherwise than as carrier". Supra 246 U.S. at 637, 38 S.Ct. at 415.

 Where the contract between carrier and shipper or receiver to provide compensation for damaged goods is so closely connected to the agreement embodied in the bill of lading as to constitute at most a clarification or modification of that agreement it is governed by federal law. The federal pre-emptive tent over the main attraction, the bill of lading, covers what is essentially a side-show, the agreement by the carrier to repair.

 In this case, the agreement to "repair and invoice Strickland Transportation Co., Inc. for charges" is written on an "Inspection Report Of Loss Or Damage Discovered After Delivery." It is apparent from the face of the complaint and from this report attached to the complaint, and therefore made a part of it for purposes of this motion (Federal Rule of Civil Procedure, 10(c)), that

the inspection and instruction to repair were routine. Even if this agreement to repair be considered a novation, it seems designed to assist the flow of commerce by reducing delays in the use of damaged goods and by eliminating disputes between common carriers and their customers. If the federal policy in favor of unhindered commerce is strong enough to cover the damage claims based upon the bill of lading, it is powerful enough to cover collateral agreements on compensation for damaged goods such as the one in this case. Cf. Dice v. Akron, Canton & Youngstown R. R., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952) (federal, not state law, controls release of rights of railroad employees).

 In any event, even should the complaint be construed as involving two claims—one arising out of breach of obligations undertaken in the issuance of the bill of lading and the second arising out of the subsequent agreement to repair—a claim for more than $3,000 can be predicated not on the agreement to repair but on the original damage. Under the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), this court, having jursidiction over the main claim, has jurisdiction over any related claim. United Mine Workers of America v. Gibbs, 383 U.S. 715, 722–729, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Strachman v. Palmer, 177 F.2d 427 (1st Cir. 1949). As the Supreme Court recently pointed out in United Mine Workers of America v. Gibbs (Id. at 725, 86 S.Ct. at 1138):

> "The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole."

Abandonment of the federally based cause of action in favor of a possible state created cause of action would not "affect the district court's jurisdiction once acquired." Hazel Bishop, Inc. v. Perfemme, Inc., 314 F.2d 399, 403, 5 A.L.R.3d 1031 (2d Cir. 1963).

Viewed from the standpoint of litigation, a rule of substantive law states the factual conditions for obtaining a legal remedy. Michael, The Basic Rule of Pleading, 5 Record of N.Y.C.B.A. 175, 185 (1950). Looked at from the standpoint of the legislature, substantive law defines rules of permissible conduct in the non-litigation world and provides sanctions for breach of those rules. From either vantage point it is federal substantive law which controls this action and plaintiff can obtain no remedy in this or any other court unless he can prove a breach of that law.

The motion to remand is denied.

So ordered.