**Robert N. FINNIE, Petitioner,**

v.

**DISTRICT NO. 1–PACIFIC COAST DISTRICT, MARINE ENGINEERS BENEFICIAL ASSOCIATION; and National Marine Engineers Beneficial Association (AFL–CIO), Respondents.**

**No. C–81–2378 WHO.**

United States District Court,
N. D. California.

Nov. 25, 1981.

Philip Borowsky, argued, Robert Cartwright, Cartwright, Sucherman, Slobin & Fowler, San Francisco, Cal., for petitioner.

Allan Brotsky, San Francisco, Cal., for respondents.

## OPINION

ORRICK, District Judge.

This case raises the question whether a district court has jurisdiction under § 301(a) of the Taft-Hartley Act, 29 U.S.C. § 185(a), over an action brought by an individual against his union alleging violation of the union constitution but failing to allege that the dispute has a potentially significant impact upon labor-management relations or industrial peace. The Court finds that it does not have jurisdiction and remands the case to the state court.

I

This action arose out of an intra-union dispute in 1979 that resulted in plaintiff's expulsion from defendant union. Plaintiff, a qualified ship's engineer and a longtime member of the Marine Engineers Beneficial Association (the "Union"), was offered the position of chief engineer on the S/S *Valerie F*. The ship's regular officers, all of whom were members of the Union, had been locked out of their jobs in a labor dispute and had been replaced by members of a rival union, the Masters, Mates, and Pilots Union which, faced with a shortage of qualified officers, offered the chief engineer's position to plaintiff. Despite being requested not to sail on the *Valerie F* by a member of the Union, plaintiff did so, and boarded the ship in New Orleans for its voyage to California. The Union, charging plaintiff with strikebreaking, thereupon instituted trial proceedings against him in New Orleans pursuant to the applicable provisions of the Union's constitution, and after a hearing expelled plaintiff from the Union.

Alleging that he had been wrongfully expelled from the Union in violation of the due process guarantees contained in the Union's constitution, plaintiff filed this action in the Superior Court of the City and County of San Francisco seeking a writ of mandamus ordering his reinstatement in the Union and damages caused by his expulsion. His action was based on §§ 1085 and 1095 of the California Code of Civil Procedure, which authorize mandamus to compel reinstatement of a right wrongfully deprived and damages incidental to such deprivation. The complaint alleged plaintiff's right to recovery under California common law doctrines establishing rights to due process and fairness in labor union expulsion proceedings and to mandate compel-

ling reinstatement for breach of contract and tortious breach of an obligation (the duty to provide due process) imposed by law.

Defendant removed the case to this Court, asserting jurisdiction under § 301(a) of the Taft-Hartley Act, 29 U.S.C. § 185(a), which establishes federal district court jurisdiction over "[s]uits for violation of contracts * * * between any * * * labor organizations [representing employees in an industry affecting commerce] * * *."

## II

Although it is generally the case that a plaintiff is the master of his cause of action and thus may choose to base his suit on state law even though he could validly state a claim under federal law, see, e.g., *Sylgab Steel & Wire Corp. v. Strickland Transportation Co.*, 270 F.Supp. 264 (E.D.N.Y.1967), an exception to this rule exists where the unstated federal claim preempts state law in the area. *See Hearst Corp. v. Shopping Center Network, Inc.*, 307 F.Supp. 551 (S.D.N.Y.1969); 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3722. Section 301(a) preempts state law in this field of labor law, *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957); thus, as the Sixth Circuit held in *Avco Corp. v. Aero Lodge No. 735*, 376 F.2d 337, 340 (6th Cir. 1967), aff'd 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), "[t]he force of Federal preemption in this area of labor law cannot be avoided by failing to mention Section 301 in the complaint."

Plaintiff argues that this action was not pleaded under § 301(a) and does not arise under that section, and seeks to remand the case to the Superior Court. The question presented for this Court's decision, therefore, is whether a union member's suit for wrongful expulsion from his union in violation of the union constitution's procedural rules "arises under" § 301(a) of the Taft-Hartley Act, and thus states a claim over which this Court has subject matter jurisdiction.

Defendants' argument that this action states a claim under § 301(a) rests on a joint reading of two cases, *United Association of Journeymen v. Local 334*, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), and *Stelling v. International Brotherhood of Electrical Workers*, 587 F.2d 1379 (9th Cir. 1978). In *Journeymen* the Supreme Court, in a suit by a local union against its international alleging a violation of the international's constitution arising from the international's ordered consolidation of several locals, held that a union constitution is a "contract between * * * labor organizations" within the meaning of § 301(a), and that federal jurisdiction in such suits does not depend upon allegations that the dispute could have a significant impact on labor-management relations or industrial peace. In *Stelling* the Ninth Circuit held that, where allegations are properly made that the dispute could have a significant impact on labor-management relations or industrial peace, individual union members have standing to sue under § 301(a) for violations of a union's constitution notwithstanding § 301(a)'s seeming limitation of such actions to suits between "an employer and a labor organization" or between "any such labor organizations." Defendants, reading *Journeymen* broadly, argue first that *Journeymen* overruled that part of *Stelling* which required allegations of a potentially significant impact upon national labor relations in order for jurisdiction under § 301(a) to lie in a case involving alleged violations of a union constitution. Defendants contend, however, that *Stelling's* holding that an individual union member has standing to bring suit against his union under § 301(a) is still good law, unaffected by *Journeymen*. Defendants thus conclude that, at least in this circuit, a suit by an individual union member against his union for violation of the union's constitution is, even in the absence of any allegations of potential impact upon national labor policy, an action which states a claim under § 301(a) and thus provides a basis for federal jurisdiction. This result might indeed follow were *Journeymen* to be given the expansive reading urged by defendants.

This Court declines to read *Journeymen* so broadly, however, and thus cannot accept defendants' conclusion that federal jurisdiction under § 301(a) exists in this case.

### III

*Journeymen* involved a suit brought by a union local against its parent international alleging that the international's order consolidating various locals violated the international's constitution. The district court sustained the international's position on the merits, but the Court of Appeals for the Third Circuit, raising the issue of its jurisdiction under § 301 *sua sponte*, held that "[s]uits concerning intra-union matters that do not have a significant impact on labor-management relations or industrial peace are outside the scope of § 301(a)," *Local 334 v. United Association of Journeymen*, 628 F.2d 812, 813 (6th Cir. 1980), and that since no allegations of significant impact had been made, the district court had lacked jurisdiction to hear the case.

The Supreme Court reversed. Noting that the view that a union constitution is a "contract" between parent and local unions was widely held at the time § 301(a) was enacted, *Journeymen, supra*, 101 S.Ct. at 2550, the Court held that such documents, which "prescribe the legal relationship and the rights and obligations between the parent and affiliated locals," were "contracts * * * between labor organizations" within the meaning of § 301(a). *Id.* at 2551. The Court also held that federal court jurisdiction over disputes between local and parent unions does not depend upon allegations that the dispute might have a significant impact upon labor-management relations or industrial peace. Rejecting the argument that disputes between a local and parent union concerning the terms of a union constitution are purely internal union matters which Congress never intended to regulate, the Court observed that

> "[t]here is an obvious and important difference between substantive regulations by the NLRB of internal union governance of its membership, and enforcement by the federal courts of freely en-

tered into agreements between separate labor organizations." *Id.* at 2552.

The Court noted that although Congress' primary purpose in passing § 301(a) was "to promote the achievement of industrial peace through encouragement and refinement of the collective bargaining process," *id.* at 2551, *quoting Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 509, 82 S.Ct. 519, 523, 7 L.Ed.2d 483 (1962), Congress also intended to make unions legally accountable for agreements they entered into among themselves, since doing so would itself further stability among labor organizations. *Id.* Thus, the Court concluded that disputes between unions by their very nature have a potentially significant impact upon national labor relations, making allegations of such potential impact in each individual case unnecessary.

*Stelling* involved an action by local union members against their union alleging that the union had entered into collective bargaining agreements without first obtaining the membership approval required by the union's constitution. Although the Ninth Circuit did hold that individual union members have standing to bring actions for violations of union constitutions under § 301(a), the Court found that no federal jurisdiction existed in the case because there had not been sufficient allegations that the dispute had either "traumatic industrial and economic repercussions" or that it "significantly affected labor-management relations." *Stelling, supra*, 587 F.2d at 1383. Such allegations were necessary to jurisdiction under § 301(a), stated the court, because Congress had not intended to regulate purely internal disputes:

> "[I]n each case where a constitution has provided the basis for jurisdiction, the court has specifically found that the controversy had either 'traumatic industrial and economic repercussions' or significantly affected labor-management relations, as where the dispute affected the representation of workers in collective bargaining. *Id.* (Citations omitted.)

It can be seen that *Stelling* is thus at least partially inconsistent with *Journeymen* in

its requirement that allegations that a dispute may have a significant impact on labor-management relations be made in all § 301(a) cases based on alleged violations of a union constitution. The issue is to what extent the *Journeymen* decision displaces *Stelling.* Defendants would have this Court interpret *Journeymen* as abolishing the requirement that a dispute over a union constitution involve a potentially significant impact on national labor policy in all such cases, whether that dispute be between a local and an international, as in *Journeymen,* or between an individual union member and his local, as in the present case. Read this broadly, *Stelling's* requirement of a significant impact in union constitution cases would no longer apply in any such case, thus creating federal jurisdiction in this Court over the instant dispute. The Court declines, however, to adopt this interpretation of *Journeymen,* for nothing the Supreme Court said in that case indicated any intention to abandon the well-established proposition that Congress in passing Taft-Hartley did not intend "to interfere with union self-government or to regulate a union's internal affairs." *NLRB v. Allis-Chalmers Manufacturing Co.,* 388 U.S. 175, 184, 87 S.Ct. 2001, 2008, 18 L.Ed.2d 1123 (1967).

In declining to impose a significant impact requirement in a case involving a dispute between a local and an international, the *Journeymen* Court emphasized the fact that Congress intended that unions "be made legally accountable for agreements into which they entered among themselves, an objective that itself would further stability among labor organizations." *Journeymen, supra,* 101 S.Ct. at 2551. *Journeymen*

thus stands for the proposition that suits between a local and an international *by their very nature* have a potentially significant impact upon labor-management relations and industrial peace: it does not hold that *any* suit involving a union constitution, even if brought by an individual union member against his local and even if it involves purely internal intra-union governance matters, has a potentially significant impact upon labor-management relations sufficient to dispense with specific allegations of such an impact. To decide otherwise would be to do injury to the policy balance struck by Congress in the Taft-Hartley Act, and developed more fully in *San Diego Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), which preempts state court jurisdiction in cases where the exercise of such jurisdiction might threaten "interference with the clearly indicated policy of industrial relations," but permits the states to act in situations involving activities which are a "merely peripheral concern of the Labor Management Relations Act." *Id.* 359 U.S. at 243, 79 S.Ct. at 778. The present dispute, which involves the question of whether a union's internal disciplinary procedures violate the due process guarantees of the union's constitution, is one which a court can decide by simply focusing upon the union's constitution and by-laws. *See Amalgamated Association of Street, Electrical Railway & Coach Employees v. Lockridge,* 403 U.S. 274, 296, 91 S.Ct. 1909, 1922, 29 L.Ed.2d 473 (1970). There exist no issues of potentially significant impact upon national labor policy requiring federal rather than state decision.[1]

1. In *International Association of Machinists v. Gonzales,* 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958), the Supreme Court held that state court jurisdiction was not preempted in a suit against a labor union by an individual who claimed he had been wrongfully expelled in violation of his contractual rights. The action, stated the Court, involved entirely internal union matters, and since Gonzales sought reinstatement, a remedy beyond the power of the NLRB, in addition to damages, the Court held that the state court had the power to "fill out" its equitable remedy by awarding consequential

damages even though these damages might be for conduct which violated federal labor law. *Id.* at 620–21, 78 S.Ct. at 925. *Gonzales* was decided one year before *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and subsequent cases have made it clear that "the full-blown rationale of *Gonzales* could not survive the rule of *Garmon.*" *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 295, 91 S.Ct. 1909, 1922, 29 L.Ed.2d 473 (1970). Nevertheless,

"*Garmon* did not cast doubt upon the result reached in *Gonzales,* but cited it approvingly

 The Court's conclusion that *Journeymen* extends only to disputes between a local and an international, and not to suits brought by an individual union member against his local, is further buttressed by the Supreme Court's express reservation, in footnote 16, of the issue of "whether individual union members may bring suit on a union constitution against a labor organization." *Journeymen, supra,* 101 S.Ct. at 2252 n.16. The Ninth Circuit in *Stelling* found that individuals have standing to sue under § 301(a) and that the significant impact requirement applied to *all* actions brought under § 301(a) alleging violations of a union constitution. To the extent that *Stelling* is inconsistent with *Journeymen,* it is, of course, displaced; but to the extent that it is not inconsistent with *Journeymen* it is still valid precedent. Footnote 16 strongly suggests that *Journeymen's* abolition of the significant impact requirement does not extend beyond suits between separate labor organizations like the local and the international there involved, since it is difficult to understand how a decision can affect a class of suits regarding which there is no certainty that standing exists. Thus, *Stelling's* holding that a potentially significant impact upon labor-management relations or industrial peace must be shown before an *individual's* suit on a union constitution can lie under § 301(a) is still valid precedent in the Ninth Circuit, and is binding on this Court.

 Because there have been no allegations that the present dispute has a potentially significant impact upon labor-management relations or industrial peace, this Court lacks jurisdiction to entertain this suit. The action was properly brought in the state courts on a state cause of action, and it is in the state court that it belongs. Exercising its authority under 28 U.S.C. § 1447(c) to remand to the state courts actions which have been improvidently removed, the Court therefore remands this

as an example of the fact that state court jurisdiction is not pre-empted 'where the activity regulated was a merely peripheral concern of the * * * Act.'" *Id.* *Gonzales* is still valid precedent, therefore, to the extent that it suggests that disputes over

case to the Superior Court of the City and County of San Francisco. Petitioner shall submit a form of judgment by December 10, 1981.

purely internal union disciplinary matters, like the expulsion proceedings challenged in that case, are beyond the pale of federal preemption.